# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION AT CINCINNATI

**KRISTEN BECKER f.k.a. KRISTEN STITSINGER,** *et al.*,

        Plaintiffs,

        v.

**PENNYMAC LOAN SERVICES, LLC,**

        Defendant.

Case No. 1:20-cv-00346-DRC

Judge Douglas R. Cole

---

## PLAINTIFFS KRISTEN BECKER AND FREDERICK STITSINGER'S RESPONSE IN OPPOSITION TO DEFENDANT PENNYMAC LOAN SERVICES, LLC'S MOTION TO DISMISS

---

**DANN LAW**
Marc E. Dann (0039425)
Brian D. Flick (0081605)
Daniel M. Solar (0085632)
Michael A. Smith, Jr. (0097147)
P.O. Box 6031040
Cleveland, OH 44103
Telephone: 216-373-0539
Facsimile: 216-373-0536
notices@dannlaw.com
*Counsel for Plaintiffs Kristen Becker and Frederick Stitsinger*

# I.     TABLE OF CONTENTS

I.   TABLE OF CONTENTS ........................................................................................................... i

II.  TABLE OF AUTHORITIES .................................................................................................. v

III. FACTUAL BACKGROUND ................................................................................................. 1

IV.  LEGAL STANDARD ............................................................................................................. 2

V.   ARGUMENT .......................................................................................................................... 3

    A.   BECKER PLAUSIBLY ALLEGES A CLAIM FOR VIOLATIONS OF RESPA ............ 3

        1.   12 U.S.C. § 2605(f) Provides for a Private Right of Action for Violations of
            12 C.F.R. § 1024.35 and 12 U.S.C. § 2605(k). ........................................................... 3

**Summary**: Becker brings claims for violations of 12 U.S.C. §§ 2605(k)(1)(C) and (E) each of which has an express private right of action through 12 U.S.C. § 2605(f). PennyMac's motion fails to address Becker's claims pursuant to 12 U.S.C. § 2605(k).

Becker also has a private right of action for violations of 12 C.F.R. § 1024.35, as § 1024.35 was promulgated pursuant to section 6 of RESPA. 78 F. Reg. 10715, n. 64; 78 F. Reg. 10790; 78 F. Reg. 10823; *Starke v. Select Portfolio Servicing, Inc.*, No. 17 C 4123, 2017 U.S. Dist. LEXIS 207616, at \*12 (N.D. Ill. Dec. 18, 2017) (citing *Alexander v. Sandoval*, 532 U.S. 275, 285 (2001)) ("Where a statute provides for enforcement through a private cause of action, a regulation may also be enforced in the same way."). PennyMac's assertion that there is no private right of action is the minority view. *Nirk v. Seterus, Inc.*, No. 17-CV-61786-WILLIAMS/VALLE, 2018 U.S. Dist. LEXIS 47472, at \*8-9 (S.D. Fla. Mar. 21, 2018); *Coppola v. Wells Fargo Bank, N.A. (In re Coppola)*, 596 B.R. 140 (Bankr. D.N.J. 2018); *Lage v. Ocwen Loan Servicing LLC*, 839 F.3d 1003, 1007 (11th Cir. 2016); *Landau v. Roundpoint Mortg. Servicing Corp.*, 925 F.3d 1365, 1368 n.1 (11th Cir. 2019); *Renfroe v. Nationstar Mortg., LLC*, 822 F.3d 1241, 1244 (11th Cir. 2016).

        2.   PennyMac Failed to Perform a Reasonable Investigation into the Errors Asserted
            by the NOE. ................................................................................................................... 8

**Summary:** RESPA requires that a servicer either correct asserted errors or conduct a reasonable investigation before responding to a borrower that it determined that no error had occurred. 12 C.F.R. § 1024.35(e)(1). *Wilson v. Bank of Am., N.A.*, 48 F. Supp. 3d 787, 804 (E.D. Pa. 2014); *Marais v. Chase Home Fin., LLC*, 24 F. Supp. 3d 712, 724 (S.D. Ohio 2014). A servicer's non-responsive, conflicting, or factually incorrect responses can be evidence of a failure to conduct a reasonable investigation. *See Nunez v. J.P. Morgan Chase Bank, N.A.*, 648 F. App'x 905, 909-910 (11th Cir. 2016).

Through the NOE, Becker alleges that she was informed by PennyMac that if she remitted $4,979.68, she would be brought current on her mortgage loan. Becker made

this payment. PennyMac cashed and accepted these funds but failed to bring Becker current on the Loan and attempted to extract additional funds from her. Further, PennyMac charged the mortgage loan "Property Inspection Fees" on six occasions, despite PennyMac itself manufacturing an alleged default on the Loan.

First, on the face of the Response to the NOE, PennyMac makes conflicting statements. PennyMac admits that it informed Becker that the total amount to bring her account current was $4,979.68 and that Becker made that payment. Second, compared to the recorded telephone conversations Becker had with PennyMac (which were recorded by PennyMac, not Becker), the Response to the NOE makes factually incorrect statements. Third, PennyMac fails to respond to Becker's claim that she made the required payment as instructed by PennyMac.

3. Becker Does Not Bring a Claim Under 12 U.S.C. § 2605(e). .................................... 10

4. Becker Sufficiently Pleads that she Suffered Actual Damages and Is Entitled to Statutory Damages. ............................................................................................... 11

    a. Becker Has Suffered Actual Damages Caused by PennyMac's Conduct. ........... 11

**Summary**: Individual borrowers can recover from a mortgage servicer any actual damages as a result of the failure to comply with RESPA. 12 U.S.C. § 2605(f)(1). Actual damages are defined broadly. *See Houston v. United States Bank Home Mortg. Wis. Servicing*, 505 F. App'x 543, 548 n.6 (6th Cir. 2012). In the Sixth Circuit, actual damages may include expenses, costs, fees, and injuries caused by a servicer's failure to respond properly, "even if incurred before the failure to respond." *Marais v. Chase Home Fin., LLC*, 24 F. Supp. 3d 712, 728 (S.D. Ohio 2014) (discussing *Marais v. Chase Home Fin., LLC*, 736 F.3d 711, 721 (6th Cir. 2013); *Lanton v. Ocwen Loan Servicing, LLC*, 793 F. App'x 398, 401 (6th Cir. 2019).

First, PennyMac improperly assessed fees and charges to the Loan as a direct result of its actions in manufacturing a default on the Loan. Second, Becker incurred the attorneys' fees and costs related to the preparation and mailing of a notice of error and a request for information and the review of the responses thereto. Third, Becker alleges that she suffered extreme emotional distress directly and proximately caused by PennyMac's actions in failing to correct errors. Fourth, Becker's credit has been negatively affected by PennyMac's actions.

    b. Becker Is Entitled to Statutory Damages. ............................................................. 14

**Summary**: The Sixth Circuit notes that a failure to respond properly pursuant to RESPA's obligations can be evidence of "continued prejudicial practices". *Martini v. JPMorgan Chase Bank, N.A.*, 634 F. App'x 159, 164 (6th Cir. 2015). Through the NOE, Becker asserted at least seven (7) separate and distinct errors that evidence PennyMac's pattern or practice of noncompliance with RESPA in this case alone.

PennyMac's failure to perform a reasonable investigation into these errors shows that PennyMac engaged in "continued prejudicial practices" towards Becker and that noncompliance with 12 C.F.R. § 1024.35(e) and 12 U.S.C. § 2605(k) was PennyMac's "standard operating procedure". *Martini*, 634 F. App'x at 164; *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 336 (1977). Becker alleges that PennyMac has had One Thousand Forty-Six (1,046) consumer complaints lodged against it that are cataloged in the CFPB's consumer complaint database and she has reviewed 15 of the complaints.

B. PLAINTIFFS PLAUSIBLY ALLEGE A CLAIM FOR BREACH OF CONTRACT .... 16

**Summary**: PennyMac materially breached the Mortgage by failing to properly make property tax payments, failing to properly apply Plaintiffs' monthly payments, and demanding Plaintiffs submit additional funds beyond what it previously required. PennyMac's actions manufactured a default that was impossible for Plaintiffs to cure, despite the numerous attempts to cure the manufactured default. PennyMac's failure to properly and timely make the required property tax payments was a material breach of the Loan, as it defeated an essential purpose of the Loan, the proper payment of property tax payments, and made it literally impossible for Plaintiffs to perform when PennyMac finally decided to inform Plaintiffs of the issue. As PennyMac's breach was material, Plaintiffs' performance was excused. Through no fault of her own, Becker was placed in default even though she made the required payments.

C. PLAINTIFFS PLAUSIBLY ALLEGE CLAIMS FOR VIOLATIONS OF THE
   OCSPA.................................................................................................................. 18

**Summary**: "The OCSPA covers transactions in connection with a residential mortgage loan between nonbank lenders and their customers whether that interaction occurs before, during, or after the transaction." *Powers v. Green Tree Servicing, L.L.C.*, 8th Dist. Cuyahoga No. 102753, 2015-Ohio-3355, at ¶ 15. R.C. 1345.091 permits claims against the assignee if the violation was committed by the assignee.

The Southern District of Ohio has already decided that the OCSPA provides for claims against mortgage loan assignees and purchasers. *Bucy v. PennyMac Loan Servs., LLC*, No. 2:15-cv-2909, 2016 U.S. Dist. LEXIS 136306, at *33-34 (S.D. Ohio Sep. 30, 2016); *see also Murphy v. Ditech Fin., L.L.C.*, 8th Dist. Cuyahoga No. 106896, 2018-Ohio-5041, ¶ 15.

PennyMac has contractual relationship with Plaintiffs as the assignee of the Mortgage and PennyMac is a nonbank mortgage lender. PennyMac purchased the Loan from NVR Mortgage Finance, Inc.

PennyMac and Plaintiffs engaged in multiple consumer transactions when PennyMac collected Plaintiffs' monthly mortgage payments. PennyMac committed the violations of

the OCSPA by engaging in consumer transactions with Plaintiffs - by failing to properly apply Plaintiffs' mortgage payments, pursuing foreclosure on the Home, furnishing negative credit information, and failing to correct the accounting on the Loan after receipt of the NOE. PennyMac does not argue that its actions were not unfair or deceptive and does not contest that Plaintiffs suffered damages as a result of its actions.

D.  PLAINTIFFS PLAUSIBLY ALLEGE CLAIMS FOR VIOLATIONS OF THE RMLA ................................................................................................................................... 21

**Summary**: On December 22, 2017, Ohio Governor John Kasich ("Kasich") signed into law Ohio House Bill 199, which substantially broadened the scope of the Ohio Residential Mortgage Lending Act, to apply to mortgage lenders. On December 19, 2018, Kasich signed into law Ohio House Bill 489 to again broaden the scope of R.C. 1322.01, et seq., to apply to mortgage servicers.

Plaintiffs bring two claims under the amended RMLA pursuant to R.C. 1322.40 and R.C. 1322.45. Both sections apply to a registrant, licensee, and person required to be registered or licensed under Chapter 1322. R.C. 1322.40(A) and R.C. 1322.45(A).

After Ohio House Bill 489 was signed into law, PennyMac, as a mortgage servicer, falls within the statute because it is both required to be registered under Chapter 1322 and has been issued certificates of registration. PennyMac admits that it is the servicer of the Loan and is required to be registered according to R.C. 1322.01(A). PennyMac is actually registered by the Ohio Department of Commerce, Division of Financial Institutions. PennyMac relies on case law that has been legislatively abrogated.

PennyMac does not address that Plaintiffs allege that it violated R.C. 1322.40 by engaging in a continued course of misrepresentations by making false or misleading statements of material fact and false promises regarding a material fact, assessing improper fees to the Loan, failing to bring the Loan current after Becker paid the $4,979.68 requested by PennyMac, demanding additional money, and failing to correct the accounting on the Loan after receipt of the NOE. PennyMac does not address that Plaintiffs allege that it violated R.C. 1322.45 by misapplying Plaintiffs' payments, mismanaging the Loan's escrow account, and failing to perform a reasonable investigation into the errors asserted by the NOE. PennyMac does not contest that the Plaintiffs suffered damages as a result of PennyMac's actions.

VI. CONCLUSION ......................................................................................................................... 24

## II.    TABLE OF AUTHORITIES

**Cases**

*Alexander v. Sandoval*,
    532 U.S. 275 (2001) .................................................................................. 4

*Alshaibani v. Litton Loan Servicing, LP*,
    No. 2:12-CV-063, 2012 U.S. Dist. LEXIS 110778 (S.D. Ohio Aug. 6, 2012) ........................ 21

*Althaus v. Cenlar Agency Inc.*,
    2017 U.S. Dist. LEXIS 167475 (D. Minn.) ............................................................ 15

*Anderson v. Barclay's Capital Real Estate, Inc.*,
    989 N.E.2d 997 (Ohio 2013) .............................................................................. 19

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .......................................................................................... 2

*Baker v. Nationstar Mortg. LLC*,
    No. 2:15-cv-2917, 2018 U.S. Dist. LEXIS 121686 (S.D. Ohio July 20, 2018) ........................ 9

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) .......................................................................................... 2

*Bucy v. PennyMac Loan Servs., LLC*,
    No. 2:15-cv-2909, 2016 U.S. Dist. LEXIS 136306 (S.D. Ohio Sep. 30, 2016) ...................... 20

*Cameron v. Ocwen Loan Servicing, LLC*, No. 2:18-cv-428, 2020 U.S. Dist. LEXIS 3468 (S.D.
    Ohio Jan. 9, 2020) ............................................................................................ 12

*Coppola v. Wells Fargo Bank, N.A. (In re Coppola)*,
    596 B.R. 140 (Bankr. D.N.J. 2018) ...................................................................... 5

*Equicredit Corp. of Am. v. Jackson*,
    7th Dist. Mahoning No. 03 MA 191, 2004-Ohio-6376 .......................................... 22

*Ford v. Nationstar Mortg., LLC*,
    No. 2:16-cv-00344-RFB-PAL, 2018 U.S. Dist. LEXIS 88812 (D. Nev. May 28, 2018) ....... 4, 5

*Girgis v. Countrywide Home Loans, Inc.*,
    733 F. Supp. 2d 835 (N.D. Ohio 2010) ................................................................ 23

*Grembowiec v. Select Portfolio Servicing, Inc.*,
    Civil Action No. 18-16885, 2019 U.S. Dist. LEXIS 118031 (D.N.J. July 16, 2019) .............. 12

*Guccione v. JPMorgan Chase Bank, N.A.*,
    No. 3:14-cv-04587 LB, 2015 U.S. Dist. LEXIS 57700 (N.D. Cal. May 1, 2015) .................... 5

*Hackett v. Wells Fargo Bank, N.A.*,
    No. 2:17-CV-07354-CAS-ASx, 2019 U.S. Dist. LEXIS 193296 (C.D. Cal. Nov. 4, 2019) ...... 9

*Hicks v. Seterus, Inc.*,
    No. 1:18 CV 620, 2018 U.S. Dist. LEXIS 109212 (N.D. Ohio June 29, 2018) ...................... 20

*Houston v. United States Bank Home Mortg. Wis. Servicing*,
    505 F. App'x 543 (6th Cir. 2012) ................................................................ 11, 13

*In re Carter*,
  553 F.3d 979 (6th Cir. 2009) ....................................................................... 3

*Int'l Bhd. of Teamsters v. United States*,
  431 U.S. 324 (1977) .................................................................................... 14

*Jones v. Wells Fargo Bank, N.A.*,
  Civil Action No. ELH-18-8, 2018 U.S. Dist. LEXIS 155985 (D. Md. Sep. 12, 2018) ............. 5

*Keys v. Humana, Inc.*,
  684 F.3d 605 (6th Cir. 2012) ........................................................................ 2

*Lage v. Ocwen Loan Servicing LLC*,
  839 F.3d 1003 (11th Cir. 2016) ..................................................................... 5

*Landau v. Roundpoint Mortg. Servicing Corp.*,
  925 F.3d 1365 (11th Cir. 2019) ..................................................................... 5

*Lanton v. Ocwen Loan Servicing, LLC*,
  793 F. App'x 398 (6th Cir. 2019) ................................................................. 11

*Librizzi v. Ocwen Loan Servicing, LLC*,
  120 F. Supp. 3d 1368 (S.D. Fla. 2015) ......................................................... 6

*Lucas v. New Penn Fin., LLC*,
  Civil Action No. 17-cv-11472-ADB,
  2019 U.S. Dist. LEXIS 15219 (D. Mass. Jan. 31, 2019) .................................... 4

*Marais v. Chase Home Fin. LLC*, 7
  736 F.3d 711 (6th Cir. 2013) .................................................................. 3, 11

*Marais v. Chase Home Fin., LLC*,
  24 F. Supp. 3d 712 (S.D. Ohio 2014) ....................................................... 8, 11

*Marion Family YMCA v. Hensel*,
  178 Ohio App. 3d 140, 2008-Ohio-4413, 897 N.E.2d 184 (3d Dist. Ohio 2008) ................. 16

*Martini v. JPMorgan Chase Bank, N.A.*,
  634 F. App'x 159 (6th Cir. 2015) ................................................................ 14

*McGahey v. Fannie Mae*,
  266 F. Supp. 3d 421 (D. Me. 2017) ............................................................. 13

*McMillen v. Resurgent Capital Servs., L.P.*,
  No. 2:13-CV-00738, 2014 U.S. Dist. LEXIS 92345 (S.D. Ohio July 8, 2014) ................... 12

*Medrano v. Flagstar Bank, FSB*,
  704 F.3d 661 (9th Cir. 2012) .................................................................... 3

*Mejia v. Ocwen Loan Servicing, LLC*,
  2017 U.S. App. LEXIS 14533 (11th Cir. 2017) .............................................. 15

*Messina v. Green Tree Servicing, Ltd. Liab. Co.*,
  210 F. Supp. 3d 992 (N.D. Ill. 2016) .......................................................... 8

*Miller v. Caliber Home Loans, Inc.*,
  Civil Action No. 3:16-cv-621-DJH-DW,
  2018 U.S. Dist. LEXIS 25504 (W.D. Ky. Feb. 15, 2018) .................................... 11

*Miller v. HSBC Bank U.S.A., N.A.*,
  2015 U.S. Dist. LEXIS 16736 (S.D.N.Y. Feb. 10, 2015) ........................................ 6
*Miranda v. Ocwen Loan Servicing*, LLC,
  148 F. Supp. 3d 1349 (S.D. Fla. 2015) ................................................................ 13
*Moore v. Caliber Home Loans, Inc.*,
  No. 1:14-cv-852, 2015 U.S. Dist. LEXIS 117737 (S.D. Ohio Sep. 3, 2015) .......................... 14
*Murphy v. Ditech Fin., L.L.C.*,
  8th Dist. Cuyahoga No. 106896, 2018-Ohio-5041 ................................................ 20
*Nationstar Mortg. LLC v. Dadi*,
  No. 3:17-cv-165 (MPS), 2018 U.S. Dist. LEXIS 144223 (D. Conn. Aug. 24, 2018) ............... 5
*Nirk v. Seterus, Inc.*,
  No. 17-CV-61786-WILLIAMS/VALLE,
  2018 U.S. Dist. LEXIS 47472 (S.D. Fla. Mar. 21, 2018) ........................................ 6
*Nunez v. J.P. Morgan Chase Bank, N.A.*,
  648 F. App'x 905 (11th Cir. 2016) ...................................................................... 8
*Ogden v. PNC Bank*,
  Civil Action No. 13-cv-01620-MSK-MJW,
  2014 U.S. Dist. LEXIS 113647 (D. Colo. July 14, 2014) ........................................ 15
*Pope v. Carrington Mortg. Servs., LLC*,
  No. 1:18-CV-240, 2018 U.S. Dist. LEXIS 98413 (N.D. Ohio June 12, 2018) ................. 11, 12
*Powers v. Green Tree Servicing, L.L.C.*,
  8th Dist. Cuyahoga No. 102753, 2015-Ohio-3355 .......................................... 19, 20
*Renfroe v. Nationstar Mortg., LLC*,
  822 F.3d 1241  (11th Cir. 2016) ................................................................ 5, 15
*Rodriguez v. Seterus, Inc.*,
  No. 15-61253-Civ, 2015 U.S. Dist. LEXIS 130172 (S.D. Fla. Sep. 28, 2015) ...................... 15
*Schmidt v. PennyMac Loan Servs., LLC*,
  106 F. Supp. 3d 859 (E.D. Mich. 2015) .................................................................. 7
*Schoen v. Bank of Am., N.A.*,
  No. 2:17-cv-648, 2019 U.S. Dist. LEXIS 23460 (S.D. Ohio Feb. 13, 2019) ...................... 16
*Smith v. ABN AMRO Mortg. Grp., Inc.*,
  No. 1:06cv45, 2007 U.S. Dist. LEXIS 26585, (S.D. Ohio Mar. 27, 2007) ....................... 22
*Starke v. Select Portfolio Servicing, Inc.*,
  No. 17 C 4123, 2017 U.S. Dist. LEXIS 207616 (N.D. Ill. Dec. 18, 2017) ....................... 4
*Sutton v. CitiMortgage, Inc.*,
  228 F. Supp. 3d 254 (S.D.N.Y. 2017) .................................................................... 4
*Tanasi v. CitiMortgage, Inc.*,
  257 F. Supp. 3d 232 (D. Conn. 2017) .................................................................... 5
*Taylor v. First Resolution Invest. Corp.*,
  72 N.E.3d 573 (Ohio 2016) ............................................................................... 20

vii

*Transp. Ins. Co. v. Busy Beaver Bldg. Ctrs., Inc.*,
   969 F. Supp. 2d 875  (S.D. Ohio 2013) .......................................................................... 16, 18
*Watts v. Mortg. Bridge Sols., LLC*,
   No. 16-10552, 2016 U.S. Dist. LEXIS 183222 (E.D. Mich. Dec. 7, 2016) ............................. 6
*Weber v. Seterus, Inc.*,
   No. 16 C 6620, 2018 U.S. Dist. LEXIS 51490 (N.D. Ill. Mar. 28, 2018) ............................. 4, 5
*Whitacre v. Nations Lending Corp.*,
   No. 5:19CV809, 2019 U.S. Dist. LEXIS 127759 (N.D. Ohio July 31, 2019)......................... 20
*Wilk v. Discover Bank*,
   11th Dist. Lake No. 2019-L-006, 2019-Ohio-3842 ............................................................... 22
*Willson v. Bank of Am., N.A.*,
   No. 15-14303-CV, 2016 U.S. Dist. LEXIS 188647 (S.D. Fla. May 2, 2016) .......................... 7
*Wilson v. Bank of Am., N.A.*,
   48 F. Supp. 3d 787 (E.D. Pa. 2014) ...................................................................................... 8

**Statutes**

12 U.S.C. § 2601 ........................................................................................................................ 3
12 U.S.C. § 2605 ................................................................................................................. passim
R.C. 1322.01 ..................................................................................................................... 21, 22
R.C. 1322.07 ........................................................................................................................... 22
R.C. 1322.40 ........................................................................................................................... 22
R.C. 1322.45 ........................................................................................................................... 22
R.C. 1345.01 ..................................................................................................................... 19, 21
R.C. 1345.02 ........................................................................................................................... 18
R.C. 1345.031 ......................................................................................................................... 19
R.C. 1345.091 ......................................................................................................................... 19
R.C. 5725.01 ........................................................................................................................... 21

**Other Authorities**

78 F. Reg. 10709 ...................................................................................................................... 4
78 F. Reg. 10715 ...................................................................................................................... 4
78 F. Reg. 10737 ...................................................................................................................... 4
78 F. Reg. 10790 ................................................................................................................... 4, 7
78 F. Reg. 10791 ...................................................................................................................... 7
78 F. Reg. 10808 ...................................................................................................................... 7
78 F. Reg. 10818 ...................................................................................................................... 5
78 F. Reg. 10823 ...................................................................................................................... 4
Ohio House Bill 199 ............................................................................................................... 21
Ohio House Bill 489 ............................................................................................................... 21

**Rules**

Fed. R. Civ. P. 12 ..................................................................................................................... 2

**Regulations**

12 C.F.R § 1024.1 ........................................................................................................ 3

12 C.F.R. § 1024.35 .............................................................................................. passim

12 C.F.R. § 1024.38 ................................................................................................... 5

12 C.F.R. § 1024.39 ................................................................................................... 6

12 C.F.R. § 1024.40 ................................................................................................... 7

12 C.F.R. § 1024.41 ................................................................................................... 6

### III.    FACTUAL BACKGROUND

Plaintiff Kristen Becker ("Becker") and Frederick Stitsinger ("Stitsinger") (collectively, "Plaintiffs"), through counsel, hereby respond in opposition to the motion to dismiss (the "Motion") filed by Defendant PennyMac Loan Services, LLC ("PennyMac"). Plaintiffs jointly bring four claims against PennyMac for breach of contract, violations of the Ohio Consumer Sales Practices Act (OCSPA), and violations of the Ohio Residential Mortgage Lending Act (RMLA). Additionally, Becker brings a claim against PennyMac for violations of the Real Estate Settlement Procedures Act (RESPA).

Plaintiffs brought this case because PennyMac failed to pay property taxes for Becker's home in a timely manner (the "Home"). (D.E. 1, ¶ 29). PennyMac waited months to inform Plaintiffs that the property taxes had become delinquent because of PennyMac's failure. PennyMac then substantially increased Becker's payment to allow for the repayment of delinquent taxes and refused to explain to Becker why they did so. (D.E. 1, ¶¶ 36-37). Becker made her April 2018 payment early and, on March 27, 2018, PennyMac applied the entire amount to her mortgage loan's (the "Loan") escrow account instead of correctly applying the payment principal interest and then escrow according to the terms of the Note, Mortgage, and the Truth in Lending Act. (D.E. 1, ¶ 38). This misapplication of Becker's money combined with PennyMac's failure to make timely property tax payments resulted in PennyMac manufacturing a default on the Loan. (D.E. 1, ¶ 38).

Instead of working with Becker to correct this issue, PennyMac failed to explain to her what she owed and routinely requested different amounts. (D.E. 1, ¶¶ 40-42). On August 8, 2018, Becker contacted PennyMac as part of her ongoing efforts to correct the accounting on the Loan and a PennyMac representative instructed her that she owed a total of $4,979.68. (D.E. 1, ¶ 42(a)).

1

On August 10, 2018, Becker made a payment in the amount of $4979.68 as directed by PennyMac. (D.E. 1, ¶ 43). Despite making the payment that PennyMac requested, PennyMac continued to request additional funds and placed Plaintiffs in fear of losing their home to foreclosure. (D.E. 1, ¶¶ 44-48).

On May 24, 2019, Becker sent a notice of error (the "NOE") to PennyMac asserted that PennyMac failed to bring the Loan current and improperly assessed fees and charges to the Loan. (D.E. 1-8). On June 11, 2019, PennyMac sent a response to the NOE (the "Response to the NOE") that contained false, conflicting, and vague answers to the asserted errors. (D.E. 1-9; D.E. 1, ¶¶ 51-56). As a direct and proximate result of the inadequate Response to the NOE, Becker incurred attorneys' fees and costs in mailing and preparing a request for information (the "RFI") to PennyMac for information related to the Loan. (D.E. 1-10; D.E. 1, ¶ 57). Plaintiffs seek to clarify and determine once and for all the correct balance on the mortgage loan and to hold PennyMac accountable for Becker's frustrating experience. (D.E. 1, ¶ 1).

## IV.    LEGAL STANDARD

The Supreme Court instructs that to survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim satisfies this standard when its factual allegations "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Courts are required to "construe the complaint in the light most favorable to the plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012). The Complaint meets and exceeds these standards.

## V.    ARGUMENT

### A.    BECKER PLAUSIBLY ALLEGES A CLAIM FOR VIOLATIONS OF RESPA

"As a remedial statute, RESPA is construed broadly to effectuate its purposes." *Marais v. Chase Home Fin. LLC*, 736 F.3d 711, 719 (6th Cir. 2013) (citing *In re Carter*, 553 F.3d 979, 985-986, n.5 (6th Cir. 2009)). RESPA was enacted, in part, to ensure "that consumers throughout the Nation are provided with greater and timelier information on the nature and costs of the settlement process and are protected from unnecessarily high settlement charges caused by abusive practices that have developed in some areas of the country." 12 U.S.C. § 2601(a). "RESPA's provisions relating to loan servicing procedures should be 'construed liberally' to serve the statute's remedial purpose. *Medrano v. Flagstar Bank, FSB*, 704 F.3d 661, 665-66 (9th Cir. 2012).

### 1.    12 U.S.C. § 2605(f) Provides for a Private Right of Action for Violations of 12 C.F.R. § 1024.35 and 12 U.S.C. § 2605(k).

As an initial matter, Becker brings claims for violations of 12 U.S.C. §§ 2605(k)(1)(C) and (E) each of which has an express private right of action through 12 U.S.C. § 2605(f). 12 U.S.C. § 2605(k)(1)(C) provides that "[a] servicer of a federally related mortgage shall not ... fail to take timely action to respond to a borrower's requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties." 12 U.S.C. § 2605(k)(1)(E) provides that "[a] servicer of a federally related mortgage shall not ... fail to comply with any other obligation found by the Bureau of Consumer Financial Protection, by regulation, to be appropriate to carry out the consumer protection purposes of this chapter."[1] *See Wiggins v. Ocwen Loan Servicing, LLC*, 722 F. App'x

---

[1] The Consumer Financial Protection Bureau (CFPB) issued Regulation X, 12 C.F.R § 1024.1, *et seq*., to carry out the consumer protection purposes of RESPA and, as such, a violation of Regulation X constitutes a violation of 12 U.S.C. § 2605(k)(1)(E). ("Considered as a whole, RESPA, as amended by the Dodd-Frank Act, reflects at least two significant consumer protection purposes: (1) To establish requirements that ensure that servicers have a reasonable basis for undertaking actions that may harm borrowers and (2) to establish servicers' duties to borrowers with respect to the

415, 418 (6th Cir. 2018). 12 U.S.C. § 2605(f) clearly states that "[w]hoever fails to comply with any provision of this section" is liable for damages. Tellingly, PennyMac fails to even address Becker's claims pursuant to 12 U.S.C. § 2605(k) in the Motion.

Becker also has a private right of action for violations of 12 C.F.R. § 1024.35, as § 1024.35 was promulgated pursuant to section 6 of RESPA. 78 F. Reg. 10737 (discussing legal authority for 12 C.F.R. § 1024.35). Again, section 6 of RESPA contains an express private cause of action. 12 U.S.C. § 2605(f). 78 F. Reg. 10715, n. 64 ("The [CFPB] notes that regulations established pursuant to section 6 of RESPA are subject to section 6(f) of RESPA, which provides borrowers a private right of action to enforce such regulations."); 78 F. Reg. 10790; 78 F. Reg. 10823; *Starke v. Select Portfolio Servicing, Inc.*, No. 17 C 4123, 2017 U.S. Dist. LEXIS 207616, at *12 (N.D. Ill. Dec. 18, 2017)[2] (citing *Alexander v. Sandoval*, 532 U.S. 275, 285 (2001)) ("Where a statute provides for enforcement through a private cause of action, a regulation may also be enforced in the same way."); *Lucas v. New Penn Fin., LLC*, Civil Action No. 17-cv-11472-ADB, 2019 U.S. Dist. LEXIS 15219, at *11 (D. Mass. Jan. 31, 2019) ("Because 12 U.S.C. § 2605(k)(1)(E) covers

---

servicing of federally related mortgage loans. Specifically, with respect to mortgage servicing, the consumer protection purposes of RESPA include responding to borrower requests and complaints in a timely manner, maintaining and providing accurate information, helping borrowers avoid unwarranted or unnecessary costs and fees, and facilitating review for foreclosure avoidance options. **Each of the provisions adopted in this final rule is intended to achieve some or all of these purposes** [emphasis added].'' 78 F. Reg. 10709).

[2] PennyMac misleads the Court when it cites *Starke*, as well as *Ford*, *Weber*, and *Sutton*, for the proposition that "Section 1024.35 does not provide for a private cause of action." *Starke*, 2017 U.S. Dist. LEXIS 207616, at *12 ("Some align with SPS, arguing that because a right of action is not explicitly provided in the section itself, no such right of action exists. … **The Court respectfully disagrees with this position, however**.") (emphasis added); *Weber v. Seterus, Inc.,* No. 16 C 6620, 2018 U.S. Dist. LEXIS 51490, at *22 (N.D. Ill. Mar. 28, 2018) ("Like the court in *Starke*, **this Court concludes that § 1024.35 therefore 'effectuates a privately enforceable statutory right.'**") (emphasis added); *Ford v. Nationstar Mortg., LLC*, No. 2:16-cv-00344-RFB-PAL, 2018 U.S. Dist. LEXIS 88812, at *10 (D. Nev. May 28, 2018) ("Given the remedial purpose of RESPA and the CFPB's statements, **the Court agrees with the Plaintiffs that there is a private right of action under § 1024.35**.") (emphasis added); *Sutton v. CitiMortgage, Inc.*, 228 F. Supp. 3d 254, 271 (S.D.N.Y. 2017) ("**The Court will assume, for purposes of this motion, that such a private right of action exists**, given the CFPB's statements, the remedial purposes of RESPA and Regulation X, and the provision of a private right of action in 12 U.S.C. § 2605(k)(1)(E) (through § 2605(f)), for 'fail[ures] to comply with any other obligation found by the Bureau of Consumer Financial Protection, by regulation, to be appropriate to carry out the consumer protection purposes of this chapter').") (emphasis added).

violations of 12 C.F.R. § 1024.35, a violation of section 1024.35 is actionable under 12 U.S.C. § 2605(f)."). The CFPB "shall establish any requirements necessary to carry out" Section 6 of RESPA. 12 U.S.C. § 2605(j)(3). Furthermore, the CFPB expressly states that certain regulations do not contain a private right of action, such as 12 C.F.R. § 1024.38, however no such exemption is stated for 12 C.F.R. § 1024.35. 78 F. Reg. 10818.

PennyMac's assertion that there is no private right of action is the minority view. In *Coppola v. Wells Fargo Bank, N.A. (In re Coppola)*, 596 B.R. 140 (Bankr. D.N.J. 2018), the court followed the majority view on the issue and held that a private right of action for violations of 12 C.F.R. § 1024.35. *Id.* at 152-153 ("The cases that allow a private right of action for Regulation X violations, even where the regulation does not reference the 12 U.S.C. § 2605(f) remedies, often cite the remedial nature of RESPA and of Regulation X and the broad mandate of the Consumer Financial Protection Bureau."). The 11th Circuit is the only Appellate level court to interpret the relatively new regulations under RESPA. The 11th Circuit follows the majority view that 1024.35 is enforceable through 12 U.S.C. § 2605(f). *See Lage v. Ocwen Loan Servicing LLC*, 839 F.3d 1003, 1007 (11th Cir. 2016); *Landau v. Roundpoint Mortg. Servicing Corp.*, 925 F.3d 1365, 1368 n.1 (11th Cir. 2019); *Renfroe v. Nationstar Mortg., LLC*, 822 F.3d 1241, 1244 (11th Cir. 2016). Many other district courts also follow the majority view. *Jones v. Wells Fargo Bank, N.A.*, Civil Action No. ELH-18-8, 2018 U.S. Dist. LEXIS 155985, at *26 (D. Md. Sep. 12, 2018); *Nationstar Mortg. LLC v. Dadi*, No. 3:17-cv-165 (MPS), 2018 U.S. Dist. LEXIS 144223, at *22 (D. Conn. Aug. 24, 2018); *Ford*, 2018 U.S. Dist. LEXIS 88812, at *9; *Tanasi v. CitiMortgage, Inc.*, 257 F. Supp. 3d 232, 251 (D. Conn. 2017); *Weber*, 2018 U.S. Dist. LEXIS 51490, at *21-22; *Guccione v. JPMorgan Chase Bank, N.A.*, No. 3:14-cv-04587 LB, 2015 U.S. Dist. LEXIS 57700, at *34 (N.D. Cal. May 1, 2015).

PennyMac relies upon cases that spring from *Miller v. HSBC Bank U.S.A., N.A.*, 2015 U.S. Dist. LEXIS 16736 (S.D.N.Y. Feb. 10, 2015), the genesis case for the minority view. However, *Miller* references 12 C.F.R. § 1024.35(i), entitled, "Effect on servicer remedies," which suggests that paragraph (i) concerns what a servicer may or may not do, but does not mention what a borrower may do. For example, 12 C.F.R. § 1024.41(a), starts with, "[a] borrower may enforce..." while 12 C.F.R. § 1024.35(i) uses language such as, "a servicer may not" and "nothing in this section shall limit or restrict a lender or servicer from pursuing any remedy." A well-reasoned opinion out of the Southern District of Florida examined *Miller*'s argument based on 12 C.F.R. § 1024.35(i) and held that "Section 1024.35 does not expressly provide for any remedies, recognizing a private cause of action for violations of Section 1024.35 cannot be said to impermissibly expand upon the statute's remedies." *Nirk v. Seterus, Inc.*, No. 17-CV-61786-WILLIAMS/VALLE, 2018 U.S. Dist. LEXIS 47472, at *8-9 (S.D. Fla. Mar. 21, 2018).

PennyMac's reliance on *Librizzi v. Ocwen Loan Servicing, LLC*, 120 F. Supp. 3d 1368 (S.D. Fla. 2015), is misplaced because *Librizzi* specifically states that there is a private right of action through 12 U.S.C. § 2605(f) for "the failure by a loan servicer … to respond to a QWR for information about a loan, 12 U.S.C. § 2605(f)." *Id.* at 1378. Further, the reason the court in *Librizzi* dismissed the action was due to the inadequate pleading of the allegations in the complaint. *Id.* at 1379 ("[the complaint did] not allege any facts relating to the three types of wrongful acts related to a private right of action under RESPA, such as the submissions of Qualified Written Requests and Defendant Ocwen's failure to respond.").

Additionally, PennyMac's reliance on *Watts v. Mortg. Bridge Sols., LLC*, No. 16-10552, 2016 U.S. Dist. LEXIS 183222 (E.D. Mich. Dec. 7, 2016), is misplaced because the case concerned 12 C.F.R. § 1024.39, not 12 C.F.R. § 1024.35 or 12 U.S.C. § 2605(k). *Watts*, 2016 U.S. Dist.

LEXIS 183222, at *16. Further, *Watts* improperly extended the holding of *Schmidt v. PennyMac Loan Servs., LLC*, 106 F. Supp. 3d 859 (E.D. Mich. 2015). In *Schmidt*, the court recognized that the CFPB did not promulgate 12 C.F.R. § 1024.40 through 12 U.S.C. § 2605(k)(1)(E), but rather through statutes that did not contain private rights of action. *Id.* at 871. The court notes that the CFPB explicitly states that there is no private right of action under 12 C.F.R. § 1024.40. 78 F. Reg. 10808 ("the Bureau is adopting § 1024.40 as an objectives-based policies and procedures requirement … [and] the Bureau believes that private liability is not compatible."). However, unlike 12 C.F.R. § 1024.40, the CFPB explicitly states that there is a private right of action under 12 C.F.R. § 1024.39. 78 F. Reg. 10790-10791.

PennyMac misleads the Court when it fails to inform the Court that Judge Donald Middlebrooks, who decided *Willson v. Bank of Am., N.A.*, No. 15-14303-CV, 2016 U.S. Dist. LEXIS 188647 (S.D. Fla. May 2, 2016), reconsidered his opinion and held that "there can be no doubt that Plaintiff's claims for violations of § 1024.35 are brought based on RESPA's § 2605(f) private right of action. In *Lage*, the Eleventh Circuit clearly holds that a borrower has a private right of action against a servicer under § 2605 for violations of § 1024.35." See, Judge Middlebrooks' Order Granting Motion to Reconsider and Granting Renewed Motion for Abstention, attached as **Exhibit 1**.

The CFPB did not intend to create a right without a remedy. Becker acknowledges in the Complaint that she has a private right of action pursuant to 12 U.S.C. § 2605(f) and restates and incorporates this allegation in her RESPA count. PennyMac's motion to dismiss Count One must be denied because both 12 U.S.C. § 2605(k) and 12 C.F.R. § 1024.35 have a private right of action through 12 U.S.C. § 2605(f).

**2.    PennyMac Failed to Perform a Reasonable Investigation into the Errors Asserted by the NOE.**

12 C.F.R. § 1024.35(a) defines a notice of error[3] as "any written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred."

RESPA requires that a servicer either correct asserted errors or conduct a reasonable investigation before responding to a borrower that it determined that no error had occurred. 12 C.F.R. § 1024.35(e)(1). "The addition of the word 'reasonable' seemingly imposes a substantive obligation that is not satisfied by the mere procedural completion of some investigation followed by a written statement of reasons." *Wilson v. Bank of Am., N.A.*, 48 F. Supp. 3d 787, 804 (E.D. Pa. 2014); *Marais v. Chase Home Fin., LLC*, 24 F. Supp. 3d 712, 724 (S.D. Ohio 2014) ("Chase also made no effort, beyond what has already been discussed, to explain or clarify why it felt that Marais' account was correct or the fees assessed against her appropriate."). A servicer's non-responsive, conflicting, or factually incorrect responses can be evidence of a failure to conduct a reasonable investigation. *See Nunez v. J.P. Morgan Chase Bank, N.A.*, 648 F. App'x 905, 909-910 (11th Cir. 2016) (reversing dismissal of RESPA claim where servicer's responses to notice of error contradicted the history of the loan, failed to acknowledge its error, and were "unreasonable assessments of the situation"). The reasonableness of a response to a notice of error is an issue of

---

[3] Despite PennyMac's use of the phrase "QWR Response", Becker sent PennyMac a notice of error pursuant to 12 C.F.R. § 1024.35(a) and not a qualified written request. *See Messina v. Green Tree Servicing, Ltd. Liab. Co.*, 210 F. Supp. 3d 992, 1007 (N.D. Ill. 2016) (quoting the Official Interpretations: "A qualified written request is just one form that a written notice of error or information request may take. Thus, the error resolution and information request requirements in §§ 1024.35 and 1024.36 apply as set forth in those sections irrespective of whether the servicer receives a qualified written request.").

fact. *Hackett v. Wells Fargo Bank, N.A.*, No. 2:17-CV-07354-CAS-ASx, 2019 U.S. Dist. LEXIS 193296, at *28 (C.D. Cal. Nov. 4, 2019).

In *Baker v. Nationstar Mortg. LLC*, No. 2:15-cv-2917, 2018 U.S. Dist. LEXIS 121686 (S.D. Ohio July 20, 2018), the borrowers argued that their mortgage servicer "did not conduct a meaningful investigation" into their qualified written request. *Id*. at *19. The mortgage servicer stated that it "did review the account, and all transactions appear to be correct from [its] records review." *Id.* The borrowers argued that such a review is cursory and not sufficient under RESPA. *Id.* The Court agreed, stating that the mortgage servicer "has pointed to no evidence in the record that it conducted a 'reasonably thorough' examination. It relies only on the language in the Response that an investigation was conducted, with no further evidence to inform the Court whether the investigation was reasonable." *Id.* at *20.

Through the NOE, Becker alleges that she was informed by PennyMac that if she remitted $4,979.68, she would be brought current on her mortgage loan. (D.E. 1-8). Becker explains that she made this payment in reliance upon PennyMac representatives' promises and assurances. *Id.* Becker obtained recordings of telephone conversations that support these allegations. (D.E. 6-1, p. 9). PennyMac cashed and accepted these funds but failed to bring Becker current on the Loan and attempted to extract additional funds from her. (D.E. 1-8). Further, PennyMac charged the mortgage loan "Property Inspection Fees" on six occasions, despite PennyMac manufacturing a default on the Loan. (D.E. 1-8).

First, on the face of the Response to the NOE, PennyMac makes conflicting statements:

> On August 8, 2018, Mrs. Stitsinger contacted our Collections Department who informed her that the total amount due to bring the account current was $4,979.68. A payment in the amount of $4,980.00 was received on August 10, 2018, and was applied toward the June, July, and August 2018 payments. On August 31, 2018, Mrs. Stitsinger

(D.E. 1-9). In sentence one, PennyMac admits that it informed Becker that the total amount to bring her account current was $4,979.68. (D.E. 1-9). In sentence two, PennyMac admits that

Becker made that payment. (D.E. 1-9). Despite these admissions, PennyMac demanded additional funds and subsequently found no error had occurred. Second, compared to the recorded telephone conversations Becker had with PennyMac (which were recorded by PennyMac, not Plaintiffs), the Response to the NOE makes factually incorrect statements. *Compare* (D.E. 1, ¶¶ 42, 44, 45, 47) with (D.E. 1-9). The telephone conversations make it clear that Becker simply wanted to know what she owed and to pay it. (D.E. 1, ¶¶ 42, 44, 45, 47). The telephone conversations also make it clear that the PennyMac representatives made the decision to re-apply the $4,979.68 – forcing Becker into a manufactured default and paving the way for PennyMac to begin the foreclosure process. (D.E. 1, ¶¶ 42, 44, 45, 47). Third, PennyMac fails to respond to Becker's claim that she made the required payment as instructed by PennyMac. PennyMac, like in *Baker*, merely points to its records that are riddled with errors to support its claim that no error had occurred and fails to explain why it requested additional funds from Becker. Despite PennyMac's comments in the Motion, PennyMac does not explain how the transaction history permitted PennyMac to lie to Becker on August 8, 2018 about the amount needed to bring her account current.

If PennyMac had performed a reasonable investigation, it would have noticed that Becker paid the amount PennyMac instructed her to pay, and would have corrected the mortgage account. PennyMac makes no effort to explain why it instructed Becker to pay $4,979.68 to bring the mortgage loan current if that amount would not actually bring the mortgage loan current. The Response to the NOE fails to satisfy 12 C.F.R. § 1024.35(e) on its face and PennyMac has not explained how Becker fails to allege a plausible claim under RESPA.

### 3. Becker Does Not Bring a Claim Under 12 U.S.C. § 2605(e).

Becker does not bring a claim under 12 U.S.C. § 2605(e) and it is not certain why PennyMac devotes three paragraphs to arguing that it complied with 12 U.S.C. § 2605(e). As

discussed, *supra*, Becker's claim is under 12 C.F.R. § 1024.35(e) and 12 U.S.C. § 2605(k), which impose a heightened substantive duty on mortgage servicers when compared to 12 U.S.C. § 2605(e).

### 4. Becker Sufficiently Pleads that she Suffered Actual Damages and Is Entitled to Statutory Damages.

To state a RESPA claim, a borrower must sufficiently allege either actual damages or statutory damages in the case of a pattern or practice of noncompliance. *Miller v. Caliber Home Loans, Inc.*, Civil Action No. 3:16-cv-621-DJH-DW, 2018 U.S. Dist. LEXIS 25504, at *6-7 (W.D. Ky. Feb. 15, 2018). First, Becker sufficiently states that she suffered actual damages resulting from PennyMac's violations. Second, Becker sufficiently advances that PennyMac committed at least seven (7) separate and distinct errors which shows a pattern or practice of noncompliance with RESPA. (*See* D.E. 1-8).

### a. Becker Has Suffered Actual Damages Caused by PennyMac's Conduct.

Individual borrowers can recover from a mortgage servicer any actual damages as a result of the failure to comply with RESPA. 12 U.S.C. § 2605(f)(1). Actual damages are defined broadly. *See Houston v. United States Bank Home Mortg. Wis. Servicing*, 505 F. App'x 543, 548 n.6 (6th Cir. 2012); *Pope v. Carrington Mortg. Servs., LLC*, No. 1:18-CV-240, 2018 U.S. Dist. LEXIS 98413, at *11 (N.D. Ohio June 12, 2018).

In the Sixth Circuit, actual damages may include expenses, costs, fees, and injuries caused by a servicer's failure to respond properly, "even if incurred before the failure to respond." *Marais*, 24 F. Supp. 3d at 728 (discussing *Marais,* 736 F.3d at 721); *Lanton v. Ocwen Loan Servicing, LLC*, 793 F. App'x 398, 401 (6th Cir. 2019) ("Moreover, this circuit has held that, under some circumstances, the cost of preparing a QWR that is inadequately responded to may sometimes constitute actual damages."); *Cameron v. Ocwen Loan Servicing, LLC*, No. 2:18-cv-428, 2020

U.S. Dist. LEXIS 3468, at *8 (S.D. Ohio Jan. 9, 2020) ("Because Ocwen's response to the NOE was deficient, the costs and fees that Ms. Cameron incurred in writing and sending the NOE turned into damages after Ocwen's deficient response solidified the cause of action."); *Pope*, 2018 U.S. Dist. LEXIS 98413, at *10 ("[A] plaintiff can establish actual RESPA damages when the plaintiff incurred expenses submitting paperwork to a lender, but the lender 'ignored its statutory duties to adequately respond."); *McMillen v. Resurgent Capital Servs., L.P.*, No. 2:13-CV-00738, 2014 U.S. Dist. LEXIS 92345, at *7 (S.D. Ohio July 8, 2014).

First, PennyMac improperly assessed fees and charges to the Loan as a direct result of its actions in manufacturing a default on the Loan. (D.E. 1, ¶¶ 65(a), 84(a)). PennyMac improperly suggests that Becker's well pled allegations are false and ignores the allegations that PennyMac improperly applied Becker's payment on March 27, 2018 and began charging her late fees. (D.E. 1, ¶¶ 38, 62). PennyMac ignores that Becker alleges that its representatives decided to re-apply her August 2018 payment to make Becker fall behind on her principal and interest payments despite Becker paying the full amount requested by PennyMac. (D.E. 1, ¶¶ 44-47, 50, 63; D.E. 1-8). If PennyMac had performed a reasonable investigation into the errors asserted by the NOE, it would have fixed these accounting issues. As discussed, *supra*, those fees and charges turned into damages when PennyMac failed to properly respond to the NOE and the exhibits attached to the Motion demonstrate that PennyMac has assessed and continues to assess further fees and charges. (*See* D.E. 7-18).

Second, "attorneys' fees incurred to remedy a RESPA violation 'are recoverable as actual damages under RESPA if they are not incurred in connection with bringing a suit under the statute.'" *Grembowiec v. Select Portfolio Servicing, Inc.*, Civil Action No. 18-16885, 2019 U.S. Dist. LEXIS 118031, at *16 (D.N.J. July 16, 2019); *McGahey v. Fannie Mae*, 266 F. Supp. 3d

421, 441 (D. Me. 2017); *Miranda v. Ocwen Loan Servicing*, LLC, 148 F. Supp. 3d 1349, 1355 (S.D. Fla. 2015). In the instant matter, Becker incurred the attorneys' fees and costs related to the preparation and mailing of the NOE and the RFI and the review of the Response to the NOE and the Response to the RFI. (D.E. 1, ¶¶ 65(c), 84(c)). As discussed, *supra*, those fees and costs incurred before PennyMac responded to the NOE turned into damages when PennyMac failed to properly respond to the NOE.

Third, RESPA damages can include emotional damages. *Houston*, 505 F. App'x at 548 n.6. Becker alleges that she suffered extreme emotional distress directly and proximately caused by PennyMac's actions in failing to correct errors. (D.E. 1, ¶ 65(d)). If PennyMac had corrected the asserted errors upon receipt of the NOE, PennyMac would not have continued to move towards filing a foreclosure action and instructing agents to visit Becker's home to take pictures and personally engage with Becker to ask questions. (D.E. 1, ¶¶ 65(d), 84(d)). PennyMac's actions have caused Becker to justifiably worry that her home may imminently be subject to foreclosure. (D.E. 1, ¶¶ 65(d), 84(d)). Becker's extreme emotional distress has resulted in loss of sleep, anxiety, depression, and other significant emotional distress. (D.E. 1, ¶¶ 65(d), 84(d)).

Finally, PennyMac mentions but does not address Becker's claim that her credit has been negatively affected by PennyMac's actions. (D.E. 1, ¶¶ 65(b); 84(b)). If PennyMac had performed a reasonable investigation into the errors asserted by the NOE, it would have corrected its credit reporting. As Becker has sufficiently alleged actual damages caused by PennyMac's violations of RESPA and injuries that have metamorphosed into damages due to PennyMac's violations of RESPA, the Motion should be denied on this ground.

### b.      Becker Is Entitled to Statutory Damages.

The Sixth Circuit notes that a failure to respond properly pursuant to RESPA's obligations can be evidence of "continued prejudicial practices". *Martini v. JPMorgan Chase Bank, N.A.*, 634 F. App'x 159, 164 (6th Cir. 2015). Becker is entitled to $2,000.00 for each of violation of RESPA by PennyMac. 12 U.S.C. § 2605(f)(1)(B) provides:

> Whoever fails to comply with any provision of this section shall be liable to the borrower for **each such failure** ... any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $2,000."

(emphasis added); *see Moore v. Caliber Home Loans, Inc.*, No. 1:14-cv-852, 2015 U.S. Dist. LEXIS 117737, at *22-23 (S.D. Ohio Sep. 3, 2015) ("[A] company's failure to comply with three provisions of the statute can render them liable for separate damages for each such failure").

Through the NOE, Becker asserted at least seven (7) separate and distinct errors that evidence PennyMac's pattern or practice of noncompliance with RESPA. Becker asserted one (1) error pursuant to 12 C.F.R. § 1024.35(b)(11) for failing to deem Becker current after she paid PennyMac the $4,979.68 it requested and six (6) errors pursuant to 12 C.F.R. § 1024.35(b)(5) related to PennyMac's imposition of unreasonable property inspection fees. (D.E. 1-8). PennyMac's failure to perform a reasonable investigation into these errors shows that PennyMac engaged in "continued prejudicial practices" towards Becker and that noncompliance with 12 C.F.R. § 1024.35(e) and 12 U.S.C. § 2605(k) was PennyMac's "standard operating procedure". *Martini,* 634 F. App'x at 164; *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 336 (1977).

In the instant matter, Becker alleges that PennyMac has had One Thousand Forty-Six (1,046) consumer complaints lodged against it that are cataloged in the CFPB's consumer complaint database. (D.E. 1, ¶¶ 69-70). Instead of stopping there, Becker has reviewed fifteen (15) of the consumer complaints and provided more information on PennyMac's standard method of

operating. Unlike the cases cited by PennyMac, Becker has plausibly shown that PennyMac has a pattern or practice of noncompliance related to the Loan and with numerous other borrowers. *See Althaus v. Cenlar Agency Inc.*, 2017 U.S. Dist. LEXIS 167475, at \*11-13 (D. Minn.) (citing website posts of alleged errors sufficient to allege plausible pattern or practice of noncompliance at the pleading stage).

PennyMac's reliance on *Rodriguez v. Seterus, Inc.*, No. 15-61253-Civ, 2015 U.S. Dist. LEXIS 130172 (S.D. Fla. Sep. 28, 2015), is misplaced because the borrower only claimed that he had the "ability to demonstrate at some point in the future 'numerous correspondences sent to Seterus, relating to other clients under the applicable statutes, in which Seterus failed to acknowledge or adequately respond as required by law'" supported his claim for statutory damages. *Id.* at \*7-8. In *Ogden v. PNC Bank*, Civil Action No. 13-cv-01620-MSK-MJW, 2014 U.S. Dist. LEXIS 113647 (D. Colo. July 14, 2014), the borrower merely stated that "PNC also failed to respond to 3 QWRs with Nancy Kasparzk, who is another Colorado consumer impacted by PNC's failure to comply with RESPA." *Id.* at \*17. The court held this allegation to be insufficient stating that "[e]vidence of RESPA violations with just two consumers would not be a pattern or practice of violations." *Id.* at \*21.

Finally, PennyMac makes a few concerns unsupported by any authority that are not proper to be determined at the pleading stage. *See Renfroe*, 822 F.3d at 1248 ("Disclosing the identities of other borrowers, the dates of the letters, and the specifics of their inquiries is not a prerequisite to pleading statutory damages, and Nationstar cites no case saying otherwise."); *Mejia v. Ocwen Loan Servicing, LLC*, 2017 U.S. App. LEXIS 14533, at \*11 (11th Cir. 2017). Becker is not required to prove her case, or show that errors are present in PennyMac's "thousands of loans" at this time, only that it is plausible that PennyMac engaged in a pattern or practice of noncompliance. As

Becker has sufficiently alleged an entitlement to statutory damages, the Motion should be denied on this ground. For the foregoing reasons, PennyMac's motion to dismiss Count One should be denied in its entirety.

**B.      PLAINTIFFS PLAUSIBLY ALLEGE A CLAIM FOR BREACH OF CONTRACT**

"Under Ohio law, the elements of a breach of contract claim are: 1) the existence of a contract; 2) performance by the plaintiff; 3) breach by the defendant; and 4) damage or loss to the plaintiff as a result of the breach." *Schoen v. Bank of Am., N.A.*, No. 2:17-cv-648, 2019 U.S. Dist. LEXIS 23460, at *31-32 (S.D. Ohio Feb. 13, 2019). "A 'material breach of contract' is a failure to do something that is so fundamental to a contract that the failure to perform defeats the essential purpose of the contract or makes it impossible for the other party to perform." *Id.* at *45 (citing *Marion Family YMCA v. Hensel*, 178 Ohio App. 3d 140, 2008-Ohio-4413, 897 N.E.2d 184, 186 (3d Dist. Ohio 2008)). "Performance under a contract is excused by a counter-party's failure to perform only where that counter-party's breach of contract is material." *Transp. Ins. Co. v. Busy Beaver Bldg. Ctrs., Inc.*, 969 F. Supp. 2d 875, 889 (S.D. Ohio 2013).

PennyMac materially breached the Mortgage at least twice by failing to properly make property tax payments and failing to properly apply Plaintiffs' monthly payments. (D.E. 1, ¶¶ 20-33, 59-60). PennyMac's actions manufactured a default that was impossible for Plaintiffs to cure, despite the numerous attempts to cure the manufactured default. (D.E. 1, ¶¶ 20-48, 59-64). Pursuant to the Mortgage, PennyMac had an obligation to properly apply all funds when tendered to the balances owed to the mortgage loan. (D.E. 1-1). The Initial Escrow Account Disclosure Statement clearly states that first year county property taxes should have been $2,569.10. (D.E. 1-2). There is no dispute that Plaintiffs made proper payments from the Loan's origination through March 2018. Despite the instruction of the Initial Escrow Account Disclosure Statement and the

fact that Plaintiffs submitted the funds required to pay for all escrow items, PennyMac failed to make the required payments. (D.E. 1, ¶¶ 19-20, 29). This is supported by the fact that PennyMac received a notice from the county auditor claiming that there was a prior tax delinquency. (D.E. 1, ¶ 29).

PennyMac's failure to properly and timely make the required property tax payments was a material breach of the Loan, as it defeated an essential purpose of the Loan, the proper payment of property tax payments, and made it literally impossible for Plaintiffs to perform when PennyMac finally decided to inform Plaintiffs of the issue. As PennyMac's breach was material, Plaintiffs' performance was excused. Through no fault of her own, Becker was placed in default even though she made the required payments.

Becker submitted a payment to PennyMac at the end of March 2018 during the timeframe that Becker was constantly contacting PennyMac to obtain an answer why her payment increased substantially. (D.E. 1, ¶ 38). On March 27, 2018, before PennyMac claimed that Becker breached the Loan, PennyMac immediately failed to properly apply this payment, as PennyMac credited the entire amount to the escrow balance instead of according to the Mortgage. (D.E. 1, ¶ 38). This error resulted in PennyMac imposing on the Loan a late charge of $60.03 on April 16, 2018. (D.E. 1, ¶ 38). On or about July 26, 2018, PennyMac claimed that $2,705.62 would cure the manufactured default. (D.E. 1-6). On August 8, 2019, PennyMac claimed that $4,979.68 would cure the manufactured default. (D.E. 1, ¶ 42(a)).

Not only has PennyMac materially breached the Loan on numerous occasions and manufactured a default, its conduct indicates that it did not believe that Plaintiffs materially breached the Loan. (D.E. 1, ¶¶ 44 (Wensus stating that "this has gone on long enough"), 47 ("Stephanie" attempting to modify the payments). "In determining whether a certain breach is

material, courts consider whether the non-breaching party is deprived of an expected benefit and whether the breaching party can cure the breach." *Busy Beaver*, 969 F. Supp. 2d at 889-890. PennyMac was not deprived of any expected benefit and Becker attempted to cure the breach by asking PennyMac the amount of money required to bring her account current. (D.E. 1, ¶ 42). When Becker spoke to the PennyMac representatives, each time the representatives told her to pay different amounts and could not explain what was wrong with her mortgage account. (D.E. 1, ¶ 44(e)). When Becker finally received a number, $4,979.68, she paid *more* than that amount. (D.E. 1, ¶ 43). Further, according to PennyMac's admission in the Response to the NOE, Becker cured the manufactured default by submitting the amount PennyMac requested and PennyMac received that expected benefit. (*See* D.E. 1-9).

Despite submitting the required amount to bring the Loan current, PennyMac committed yet another material breach of the Loan by demanding amounts above and beyond $4,979.68. (*See, e.g.,* D.E. 1-7). Becker tried a few more times to have PennyMac correct the accounting on the Loan, but PennyMac representatives could not explain to her how much it believed she owed and why she was not current after the $4,979.68 payment. (D.E. 1, ¶¶ 44-45, 47). PennyMac thwarted Becker's attempts to bring her account current at every turn. For the foregoing reasons, PennyMac's motion to dismiss Count Two should be denied in its entirety.

## C. PLAINTIFFS PLAUSIBLY ALLEGE CLAIMS FOR VIOLATIONS OF THE OCSPA

The OCSPA states that "[n]o supplier shall commit an unfair or deceptive act or practice in connection with a consumer transaction. Such an unfair or deceptive act or practice by a supplier violates this section whether it occurs before, during, or after the transaction." R.C. 1345.02(A). Further, "[n]o supplier shall commit an unconscionable act or practice concerning a consumer transaction in connection with a residential mortgage. Such an unconscionable act or practice by a

supplier violates this section whether it occurs before, during, or after the transaction." R.C. 1345.031(A). "In order to maintain an action under these sections of the OCSPA, a plaintiff must establish that he or she is a 'consumer' who engaged in a 'consumer transaction' with a 'supplier,' and the supplier violated one of the above provisions." *Powers v. Green Tree Servicing, L.L.C.*, 8th Dist. Cuyahoga No. 102753, 2015-Ohio-3355, ¶ 8.

"The OCSPA covers transactions in connection with a residential mortgage loan between nonbank lenders and their customers whether that interaction occurs before, during, or after the transaction." *Powers*, 2015-Ohio-3355, ¶ 15. PennyMac does not contest that Plaintiffs are each a consumer as defined by R.C. 1345.01(D). (*See* D.E. 1, ¶ 106). R.C. 1345.01(C) defines a supplier as:

> [A] seller, lessor, assignor, franchisor, or other person engaged in the business of effecting or soliciting consumer transactions, whether or not the person deals directly with the consumer. If the consumer transaction is in connection with a residential mortgage, "supplier" does not include an assignee or purchaser of the loan for value, except as otherwise provided in section 1345.091 of the Revised Code. For purposes of this division, in a consumer transaction in connection with a residential mortgage, "seller" means a loan officer, mortgage broker, or nonbank mortgage lender.

R.C. 1345.091 permits claims against the assignee if the violation was committed by the assignee or the assignee is affiliated by common control with the seller of the loan. A residential mortgage is defined as "an obligation to pay a sum of money evidenced by a note and secured by a lien upon real property located within this state." R.C. 1345.01(I). A nonbank mortgage lender is defined as "any person that engages in a consumer transaction in connection with a residential mortgage." R.C. 1345.01(K).

PennyMac's reliance on *Anderson v. Barclay's Capital Real Estate, Inc.*, 989 N.E.2d 997 (Ohio 2013), is unavailing because of PennyMac's contractual relationship with Plaintiffs:

> The holding in *Anderson* that the servicing of a mortgage was not a consumer transaction was largely based on a lack of a contractual relationship between the servicer and the consumer and the fact that the interaction between the servicer and consumer did not have any of the hallmarks of an exchange. *Anderson* at ¶ 12. However, the same cannot be said of Green Tree. **As the assignee of the mortgage and note, it is a nonbank mortgage lender interacting with its customer. It is more than a servicer attempting to collect a debt for the mortgagee. It is the mortgagee.**

*Powers*, 2015-Ohio-3355, at ¶ 15 (emphasis added); *Murphy v. Ditech Fin., L.L.C.*, 8th Dist. Cuyahoga No. 106896, 2018-Ohio-5041, ¶ 15 ("If Ditech was nothing more than a loan servicer, the court would have correctly dismissed the complaint on the authority of *Anderson*.").

PennyMac is well aware that the Southern District of Ohio has already decided that the OCSPA provides for claims against mortgage loan assignees and purchasers. *Bucy v. PennyMac Loan Servs., LLC*, No. 2:15-cv-2909, 2016 U.S. Dist. LEXIS 136306, at *33-34 (S.D. Ohio Sep. 30, 2016). In *Bucy*, PennyMac relied on *Anderson* to support a similar argument as the one currently before the Court. *Id.* at *33. Judge Edmund A. Sargus, Jr. held that *Anderson* is not dispositive where the plaintiff alleges that the mortgage servicer purchased the mortgage loan. *Id.*

The authority PennyMac provides in the Motion is not persuasive because the cases do not deal with assignees or nonbank mortgage lenders. In *Taylor v. First Resolution Invest. Corp.*, 72 N.E.3d 573 (Ohio 2016), the Supreme Court of Ohio reiterated the Ohio Supreme Court's direction in *Anderson*. *Id.* at 601. The court in *Whitacre v. Nations Lending Corp.*, No. 5:19CV809, 2019 U.S. Dist. LEXIS 127759 (N.D. Ohio July 31, 2019), cites *Powers* to highlight that entities that are only mortgage servicers, and not assignees or nonbank mortgage lenders, are not liable under the OCSPA. *Id.* at *23-25 ("Nonbank mortgage lenders are suppliers under OCSPA, but mortgage loan servicers are not."). The borrower in *Hicks v. Seterus, Inc.*, No. 1:18 CV 620, 2018 U.S. Dist. LEXIS 109212 (N.D. Ohio June 29, 2018), made no argument that Seterus was a nonbank mortgage lender or assignee of a mortgage loan. In *Alshaibani v. Litton Loan Servicing, LP*, No.

2:12-CV-063, 2012 U.S. Dist. LEXIS 110778 (S.D. Ohio Aug. 6, 2012), the assignee of the mortgage was Wells Fargo Bank, N.A., an exempt financial institution as defined R.C. 5725.01. *Id.* at \*13. R.C. 1345.01(A) explicitly exempts transactions between financial institutions and their customers. PennyMac does not and cannot argue that it qualifies as an exempt financial institution.

Like in *Bucy*, Plaintiffs allege that PennyMac is a supplier as it is the assignee of the Loan and a nonbank mortgage lender. (D.E. 1, ¶¶ 102-103). PennyMac purchased the Loan from NVR Mortgage Finance, Inc. (D.E. 1, ¶ 17). Plaintiffs allege that PennyMac and Plaintiffs engaged in multiple consumer transactions when PennyMac collected Plaintiffs' monthly mortgage payments. (D.E. 1, ¶ 104). PennyMac committed the violations of the OCSPA "before, during, or after" engaging in consumer transactions with Plaintiffs - by "failing to properly apply Plaintiffs' mortgage payments, pursuing foreclosure on the Home, furnishing negative credit information, and failing to correct the accounting on the Loan after receipt of the NOE." (D.E. 1, ¶¶ 111). The Ohio Attorney General has determined that the failure to properly investigate borrowers' requests to correct errors constitutes unfair or deceptive acts or practices. (D.E. 1-12). PennyMac does not argue that its actions were not unfair or deceptive and does not contest that Plaintiffs suffered damages as a result of its actions. For the foregoing reasons, PennyMac's motion to dismiss Count Three should be denied in its entirety.

**D.     PLAINTIFFS PLAUSIBLY ALLEGE CLAIMS FOR VIOLATIONS OF THE RMLA**

On December 22, 2017, Ohio Governor John Kasich ("Kasich") signed into law Ohio House Bill 199 ("HB 199"), which made significant changes to R.C. 1322.01, *et seq.*, formerly the Ohio Mortgage Brokers Act (OMBA). HB 199 substantially broadened the scope of the statute, now called the Ohio Residential Mortgage Lending Act, to apply to mortgage lenders. On December 19, 2018, Kasich signed into law Ohio House Bill 489 ("HB 489"), to again broaden

the scope of R.C. 1322.01, *et seq.*, to apply to mortgage servicers. HB 489 now defines "mortgage servicer" and inserts the term in many sections throughout Chapter 1322. HB 489's title specifically "require[s] registration of mortgage loan servicers."

Plaintiffs bring two claims under the amended RMLA pursuant to R.C. 1322.40 and R.C. 1322.45. Both sections apply to a registrant, licensee, and person required to be registered or licensed under Chapter 1322. R.C. 1322.40(A) and R.C. 1322.45(A). A "registrant" is defined as "any person that has been issued a certificate of registration" under Chapter 1322. R.C. 1322.01(GG). A "licensee" is defined as "any individual who has been issued a mortgage loan originator license" under Chapter 1322. R.C. 1322.01(T). Current R.C. 1322.07(A) provides, in part:

> No person, on the person's own behalf or on behalf of any other person, shall act as a mortgage lender, **mortgage servicer**, or mortgage broker without first having obtained a certificate of registration from the superintendent of financial institutions for the principal office and every branch office to be maintained by the person for the transaction of business as a mortgage lender, mortgage servicer, or mortgage broker in this state.

(Emphasis added); *Wilk v. Discover Bank*, 11th Dist. Lake No. 2019-L-006, 2019-Ohio-3842, ¶ 24 ("R.C. 1322.07, *Certificate of mortgage lender, mortgage servicer, or mortgage broker registration; mortgage loan originator license*, governs the licensing of mortgage lenders, servicers, and loan originators.").

The case of *Equicredit Corp. of Am. v. Jackson*, 7th Dist. Mahoning No. 03 MA 191, 2004-Ohio-6376, involves a mortgage broker and contains no discussion related to a mortgage servicer's liability under Chapter 1322. In *Smith v. ABN AMRO Mortg. Grp., Inc.*, No. 1:06cv45, 2007 U.S. Dist. LEXIS 26585, (S.D. Ohio Mar. 27, 2007), the Court applied the language of the statute **before the amendments** to hold that previous R.C. 1322.07 (now renumbered to R.C. 1322.40) applies to "mortgage broker, registrant, licensee, or applicant for a certificate of registration or

license under sections 1322.01 to 1322.12 of the Revised Code." *Id.* at \*34. The mortgage servicer argued that it did not fall within the statute and the plaintiffs failed to argue to the contrary. *Id.* The same analysis applies to *Girgis v. Countrywide Home Loans, Inc.*, 733 F. Supp. 2d 835 (N.D. Ohio 2010). *Id.* at 850 (examining prior R.C. 1322.07).

The RMLA was amended to protect mortgage borrowers from wrongful conduct by mortgage lenders and mortgage servicers. PennyMac admits that it is "the servicer of the Loan." (D.E. 6-1, p. 23). PennyMac is registered with the Ohio Department of Commerce, Division of Financial Institutions as License Nos. RM.850062.005-BR, RM.850062.006-BR, RM.850062.008-BR, RM.850062.009-BR, RM.850062.011-BR, RM.850062.012-BR. (D.E. 1, ¶¶ 117, 128). After HB 489 was signed into law, PennyMac, as a mortgage servicer, falls within the statute because it is both required to be registered under Chapter 1322 and has been issued certificates of registration.

The Motion should be denied because it misrepresents the RMLA and fails to account for the recent amendments to Chapter 1322. For example, on page 21 of the Motion, PennyMac misleads the court by referring to the Chapter by its previous name and acronym (MBA) and on page 22 citing the wrong subsection for the previous definition of "mortgage broker". In a nutshell, PennyMac relies on case law that has been legislatively abrogated. PennyMac does not address that Plaintiffs allege that it violated R.C. 1322.40 by engaging in a continued course of misrepresentations by making false or misleading statements of material fact and false promises regarding a material fact, assessing improper fees to the Loan, failing to bring the Loan current after Becker paid the $4,979.68 requested by PennyMac, demanding additional money, and failing to correct the accounting on the Loan after receipt of the NOE. (D.E. 1, ¶¶ 120-123). PennyMac does not address that Plaintiffs allege that it violated R.C. 1322.45 by misapplying Plaintiffs'

payments, mismanaging the Loan's escrow account, and failing to perform a reasonable investigation into the errors asserted by the NOE. (D.E. 1, ¶¶ 132-133). PennyMac does not contest that the Plaintiffs suffered damages as a result of PennyMac's actions. (D.E. 1, ¶¶ 124, 134). For the foregoing reasons, PennyMac's motion to dismiss Counts Four and Five should be denied in its entirety.

## VI. CONCLUSION

Plaintiffs have sufficiently pled their claims against PennyMac and the Motion should be denied.

**WHEREFORE**, Plaintiffs Kristen Becker and Frederick Stitsinger respectfully request this Court deny Defendant PennyMac Loan Services, LLC's motion to dismiss in its entirety.

Respectfully submitted,

/s/ *Michael A. Smith, Jr.*
Michael A. Smith, Jr. (0097147)
Marc E. Dann (0039425)
Brian D. Flick (0081605)
Daniel M. Solar (0085632)
**DANN LAW**
P.O. Box 6031040
Cleveland, OH 44103
Telephone: 216-373-0539
Facsimile: 216-373-0536
notices@dannlaw.com
*Counsel for Plaintiffs Kristen Becker and*
*Frederick Stitsinger*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 17, 2020, a copy of the foregoing was filed electronically.

Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

Parties may access this filing through the Court's system.

/s/ *Michael A. Smith, Jr.*
Michael A. Smith, Jr. (0097147)
Marc E. Dann (0039425)
Brian D. Flick (0081605)
Daniel M. Solar (0085632)
**DANN LAW**
*Counsel for Plaintiffs Kristen Becker and*
*Frederick Stitsinger*
