**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DISTRICT AT CINCINNATI**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

KRISTEN BECKER f.k.a. KRISTEN STITSINGER
8509 Forest Valley Dr.,
Cincinnati, Ohio 45247,                                    **CASE NO. 20-cv-00346 (DRC)**

     and

FREDERICK STITSINGER
1285 Morman Rd.,
Hamilton, Ohio 45013,


                       Plaintiffs,


    -vs-


PENNYMAC LOAN SERVICES, LLC,
s/a CT Corporation System,
1300 East Ninth Street,
Cleveland, Ohio 44114,



                       Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X


**<u>DEFENDANT, PENNYMAC LOAN SERVICES, LLC'S REPLY MEMORANDUM OF
LAW IN FURTHER SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS'
COMPLAINT</u>**

## <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ..................................................................................................1

ARGUMENT ...........................................................................................................................3

I.      BECKER'S FIRST CAUSE OF ACTION ALLEGING A VIOLATION OF 12 C.F.R. 1024.35 FAILS BECAUSE THERE IS NO PRIVATE CAUSE OF ACTION UNDER REGULATION X ...........................................................................3

II.     EVEN IF THE COURT HOLDS THAT BECKER HAS A PRIVATE CAUSE OF ACTION UNDER REGULATION X, BECKER'S FIRST CAUSE OF ACTION IS REFUTED BY DOCUMENTARY EVIDENCE ANNEXED TO OR REFERENCED IN THE COMPLAINT AND FAILS AS A MATTER OF LAW ...........6

III.    BECKER'S RESPA CLAIM'S FAIL AS A MATTER OF LAW ....................................7

IV.    PLAINTIFFS' BREACH OF CONTRACT CLAIM IS REFUTED BY THE DOCUMENTARY EVIDENCE ANNEXED TO AND/OR REFERENCED IN THE COMPLAINT ...........................................................................................13

V.     PLAINTIFFS' THIRD COUNT ALLEGING VIOLATIONS OF OHIO'S CONSUMER SALES PRACTICES ACT FAILS AS A MATTER OF LAW BECAUSE IT IS INAPPLICABLE TO PLS ..................................................................15

VI.    PLAINTIFFS' FOURTH AND FIFTH COUNTS ALLEGING A VIOLATION OF THE RMLA FAIL AS A MATTER OF LAW ..........................................................16

CONCLUSION......................................................................................................................19

i

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Alexander v. Sandoval*,
    532 U.S. 275 (2001)................................................................................................4

*Anderson v. Barclay's Capital Real Estate, Inc.*,
    136 Ohio St. 3d 31, 989 N.E.2d 997 (2013) .........................................................15

*Baker v. Nationstar Mortg. LLC*,
    2018 WL 2496383 (S.D. Ohio July 2, 2018).......................................................6, 7

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007).............................................................................................8, 17

*Brown v. Bank of N.Y. Mellon*,
    2016 WL 2726645 (E.D. Va. May 9, 2016) ...........................................................5

*Bucy v. PennyMac Loan Services, LLC*,
    2016 5719804 (S.D. Ohio Sept. 30, 2016).............................................................15

*Cameron v. Ocwen Loan Servicing, LLC*,
    2020 WL 104981 (S.D. Ohio Jan. 9, 2020) ...............................................10, 11, 12

*Carter v. CrossCountry Mortgage, Inc.*,
    2019 WL 3958275 (E.D. Mich. Aug. 21, 2019) ....................................................5

*Christenson v. CitiMortgage, Inc.*,
    255 F. Supp. 3d 1099 (D. Colo. 2017)....................................................................3

*Finster v. U.S. Bank Nat'l Ass'n*,
    245 F. Supp. 3d 1304 (M.D. Fl. 2017)....................................................................7

*Fossett v. Fay Servicing LLC*,
    2017 WL 3836134 (N.D. Ga. May 4, 2017) ..........................................................4

*Gasparik v. Fed. Nat'l Mortg. Ass'n*,
    2016 WL 7015672 (D.N.H. Dec. 1, 2016)...........................................................8,9

*Giordano v. MGC Mortg., Inc.*,
    160 F. Supp. 3d 778 (D.N.J. 2016) .......................................................................11

*Gresham v. Wells Fargo Bank, N.A.*,
    2016 WL 1127717 (5th Cir. Mar. 21, 2016)...........................................................5

*Hill v. Ohio State University T&L*,
 2013 WL 2295881 (S.D. Ohio May 24, 2013) ......................................................16

*Hodge v. Bank of N.Y. Mellon as Trustee*,
 2020 WL 1035243 (N.D. Tex. Feb. 12, 2020) .......................................................7

*Katz v. The Dime Savings Bank*,
 992 F. Supp. 250 (W.D.N.Y. 1997) ......................................................................11

*Kilgore v. Ocwen Loan Serving, LLC*
 89 F. Supp. 3d 526 (E.D.N.Y. 2015) ......................................................................3

*Kolano v. Bank of America, N.A.*,
 2014 WL 1117862 (N.D. Ohio Mar. 19, 2014) ......................................................8

*Lewis v. PNC Bank, N.A.*,
 2018 WL 6249989 (S.D. Ohio Nov. 29, 2018) ....................................................13

*Librizzi v. Ocwen Loan Servicing, LLC*,
 120 F. Supp. 3d 1368 (S.D. Fla. 2015) ..................................................................3

*McDonald v .OneWest Bank, FSB*,
 929 F. Supp. 2d 1079 (W.D. Wash. 2013), *reconsideration denied*, 2013 WL
 12114868..............................................................................................................12

*Miller v. HSBC Bank U.S.A., N.A.*,
 2015 WL 585589 (S.D.N.Y. Feb. 11, 2015)...........................................................3

*Moore v. Caliber Homes Loans, Inc.*,
 2015 WL 5162482 (S.D. Ohio Sept. 3, 2015) ......................................................11

*Perron on behalf of Jackson v. J.P. Morgan Chase Bank, N.A.*,
 845 F.3d 852 (7th Cir. 2017) ...............................................................................11

*Pike v. Bank of America, N.A.*,
 2016 WL 614013 (N.D. Ohio Feb. 16, 2016) .......................................................10

*Ploog v. HomeSide Lending*, *Inc.*,
 209 F. Supp. 2d 863 (N.D. Ill. 2002) ...................................................................11

*Roes v. Specialized Loan Servicing, LLC*,
 2018 WL 3636543 (E.D. Tenn. Jul. 31, 2018) .......................................................3

*Sakyi v. Nationstar Mortgage, LLC*,
 2018 WL 4568604 (E.D. Va. Sept. 24, 2018)..........................................................4

*Sarsfield v. Citimortgage, Inc.*,
 667 F. Supp. 2d 461 (M.D. Pa. 2009) ....................................................................8

iii

*Schmidt v. PennyMac Loan Services*,
106 F. Supp. 3d 859 (E.D. Mich. 2015)............................................................5

*Touche Ross & Co. v. Redington*,
442 U.S. 560 (1979)............................................................4

*Transamerica Mortgage Advisors, Inc. v. Lewis*,
444 U.S. 11 (1979)............................................................4

*Trudell v. Carrington Mortg. Servs., LLC*,
2016 WL 6080822 (E.D. Mich. Sept. 27, 2016), *report and recommendation
adopted*, 2016 WL 6070124 (E.D. Mich. Oct. 17, 2016) ............................................................5

*Tsakanika v. JP Morgan Chase Bank, N.A.*,
2012 WL 6042836 (S.D. Ohio Dec. 4, 2012) ............................................................10

*U.S. v. Medquest Assoc's, Inc.*,
702 F. Supp. 2d 909 (M.D. Tenn. 2010)............................................................16

*Vallier v. Nationstar Mortgage, LLC*,
H-17-0998, 2018 WL 1319166 (S.D. Tex. Feb. 1, 2018)............................................................4

*Watts v. Mortg. Bridge Solutions, LLC*,
2016 WL 8188768 (E.D. Mich. Dec. 7, 2016) ............................................................5

*Wirtz v. JPMorgan Chase Bank, N.A.*,
185 F. Supp. 3d 1140 (D. Minn. 2016)............................................................11, 12

**Statutes**

12 U.S.C. § 2604(f)............................................................9

12 U.S.C. §§ 2605(f)............................................................3

15 U.S.C. 2605(k)(1)(C)............................................................8

15 U.S.C. 2605(k)(1)(E)............................................................8

Ohio Admin. Code § 1301:8-7-16............................................................18

R.C. 1322.01............................................................16

R.C. 1322.07(A)............................................................15, 16

R.C. 1322.40............................................................16

R.C. 1322.40(C)............................................................17

R.C. 1322.45(A)............................................................18, 19

**Other Authorities**

12 C.F.R. 0126.14 ................................................................................................................18

12 C.F.R. 1024.35 ......................................................................................................... *passim*

12 C.F.R. 1024.35(e) ...................................................................................................1, 6, 7

12 C.F.R. 1024.39 ...........................................................................................................3, 5

12 C.F.R. 1024.40 ...............................................................................................................5

12 C.F.R. 1024.41(a) ..........................................................................................................4

Fed. R. Civ. P. 12(b)(6) ......................................................................................................1

v

Defendant, PennyMac Loan Services, LLC ("PLS"), by and through its attorneys, Blank Rome LLP, respectfully submits its Reply Memorandum of Law ("Reply") in further support of its Motion to Dismiss (the "Motion") seeking an Order pursuant to Rule 12(b)(6) of the Federal Rule of Civil Procedure ("Federal Rules"), dismissing Plaintiffs, Kristen Becker ("Becker") and Frederick Stitsinger's (together with Becker, the "Plaintiffs"), Complaint with prejudice, together with such other and further relief as this Court may deem just and proper.[1]

## PRELIMINARY STATEMENT

Plaintiffs' Opposition to the Motion (the "Opposition") fails to establish Plaintiffs have pled valid claims against PLS.

First, this Court should hold that there is no private cause of action under Section 1024.35 of Regulation X.  Although courts are split on this issue, numerous decisions, including within the Sixth Circuit, hold that Section 1024.35 does *not* create a private cause of action under Regulation X.  Moreover, the Court should find that no private right of action exists under Section 1024.35 because that provision does not explicitly provide a private cause of action.

Second, even if the Court determines that a private right of action exists under Section 1024.35 of Regulation X, the Court should still dismiss Becker's First Cause of Action because the QWR Response addressed the concerns Becker raised in the NOE and provided, in detail, (1) an explanation of PLS's tax payments to Hamilton County, as well as the escrow analysis completed by PLS; and (2) Becker's calls to PLS and the actions PLS took in response, which complied with Section 1024.35(e).

---

[1] The relevant facts are set forth fully in the Declaration of John R. Wirthlin ("Wirthlin Declaration") and Declaration of Johnny Morton (the "PennyMac Declaration").  All capitalized terms shall have the meaning ascribed to them in Defendant's Memorandum of Law in Support of Its Motion to Dismiss (the "Moving Memorandum"), the Wirthlin Declaration and PennyMac Declaration.

1

Third, whether Plaintiffs' Complaint alleges a violation under Section 2605(e) or 2605(k), Plaintiff's RESPA claim fails as a matter of law because PLS timely responded to Becker's NOE. Further, Plaintiffs failed to establish entitlement to actual or statutory damages. Not only were Becker's purported damages not the direct result of PLS's failure to comply with RESPA, but Becker failed to plead, and cannot, establish that PLS has a pattern or practice of not responding to borrowers' notices of errors or other qualified written requests.

Fourth, Plaintiffs' breach of contract claim fails because the documentary evidence annexed to, and referenced in, the Complaint establishes that Plaintiffs failed to perform under the Note and Mortgage by failing to make timely, complete payments under the Loan. Plaintiffs' failure to make full and complete payments constitutes a material breach. In contrast, PLS made all tax payments and properly applied Plaintiffs' Loan payments. Regardless, any purported breach, which PLS denies, was not material.

Fifth, Plaintiffs' claims for alleged violations of Ohio's CSPA fail as a matter of law because the CSPA is inapplicable to PLS. Specifically, PLS, as a mortgage servicer, is not a "supplier," as defined under the CSPA.

Finally, Plaintiffs' RMLA claim fails because it contains nothing more than conclusory allegations and legal conclusions. Regardless, the documentary evidence establishes that PLS did not make any false or misleading statements to Plaintiffs.

Accordingly, this Court should grant PLS' Motion in its entirety and dismiss Plaintiffs' Complaint with prejudice.

## ARGUMENT

**I.   BECKER'S FIRST CAUSE OF ACTION ALLEGING A VIOLATION OF 12 C.F.R. 1024.35 FAILS BECAUSE THERE IS NO PRIVATE CAUSE OF ACTION UNDER REGULATION X**

Plaintiffs spend the bulk of their Opposition arguing that Regulation X provides an express private right of action.  (Opposition, Point A(1)).  Specifically, Plaintiffs argue that because RESPA provides a private cause of action, Regulation X may also be enforced in the same way. This argument ignores, and is contradicted by, the numerous courts that have held that no private right of action exists under Regulation X.

Federal courts are split regarding whether Regulation X provides for a private right of action (specifically under Sections 1024.35, 1024.36 and 1024.41).  Plaintiffs cite to several cases (none of which are in the Sixth Circuit) to support their position that there is a private right of action under Regulation X and argue that it is the minority view nationwide that no private right of action exists under Section 1024.35.  However, Plaintiffs are asking this Court to completely disregard the numerous decisions in various jurisdictions holding that there is no private right of action.  *See Miller v. HSBC Bank U.S.A., N.A.*, 2015 WL 585589, at *11 (S.D.N.Y. Feb. 11, 2015) (explaining that 12 C.F.R. § 1024.35 does not create a private right of action); *Kilgore v. Ocwen Loan Serving, LLC* 89 F. Supp. 3d 526, 538 n.4 (E.D.N.Y. 2015) (same); *Librizzi v. Ocwen Loan Servicing, LLC*, 120 F. Supp. 3d 1368, 1378-79 (S.D. Fla. 2015) (deeming that RESPA creates a private right of action for only three types of conduct listed in 12 U.S.C. §§ 2605(f); 2607(a); 2608(b)); *Christenson v. CitiMortgage, Inc.*, 255 F. Supp. 3d 1099, 1107 n.9 (D. Colo. 2017) ("neither 12 C.F.R. 1024.35 nor 12 C.F.R. 1024.39 appear to provide for a private cause of action"); *Roes v. Specialized Loan Servicing, LLC*, 2018 WL 3636543 *3 (E.D. Tenn. Jul. 31, 2018) ("Other sections promulgated under RESPA, such as 1024.41, explicitly provide a private cause of action by referring to remedies under § 2605(f). However, § 1024.35 makes no such

3

reference and therefore does not provide a private right of action."); *Fossett v. Fay Servicing LLC*, 2017 WL 3836134, *1 (N.D. Ga. May 4, 2017) ("Regulation X does not provide for a private cause of action for an alleged violation of § 1024.35."); *Vallier v. Nationstar Mortgage, LLC*, H-17-0998, 2018 WL 1319166 *5 (S.D. Tex. Feb. 1, 2018) ("there is no private cause of action for any violation of 12 C.F.R. §§ 1024.35 or 1024.39"); *Sakyi v. Nationstar Mortgage, LLC*, 2018 WL 4568604 *2 (E.D. Va. Sept. 24, 2018) ("There is no explicit right of action provided for in 12 C.F.R. § 1024.35, thus Plaintiff does not have the ability to bring a claim under Section 1024.35.").

Importantly, the plain language of Section 1024.35 does ***not*** expressly provide a private cause of action. Congress can create rights of action in statutes by express provision or implication. *See Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11 (1979). The Supreme Court has articulated various frameworks for finding implied rights of action, but the touchstone of all has been "determining whether Congress intended to create the private right of action," and that determination begins and often ends with the statutory language and framework. *See Touche Ross & Co. v. Redington,* 442 U.S. 560, 569 (1979); *see also Alexander v. Sandoval,* 532 U.S. 275, 288 (2001) ("We therefore begin (and find that we can end) our search for Congress's intent with the text and structure" of the statute.). Thus, the implication of a private right of action must come from a clear indication of Congress's intent apparent from the statute's text and structure. *See Sandoval, supra*, 532 U.S. at 287–88 (noting that the absence of "'rights-creating' language" indicated that Congress did not intend to create a private cause of action); *Lewis, supra*, 444 U.S. at 18 ("We conclude that the statutory language itself fairly implies a right to specific and limited relief in a federal court.").

Unlike Section 1024.35, Section 1024.41, which provides for loss mitigation procedures, *expressly* creates a private cause of action under RESPA. *See* 12 C.F.R. § 1024.41(a) ("a borrower

4

may enforce the provisions of this section pursuant to section 6(f) of RESPA"). Thus, the legislature clearly did not intend to create a private right of action under Section 1024.35. *See Watts v. Mortg. Bridge Solutions, LLC*, 2016 WL 8188768, at *6 (E.D. Mich. Dec. 7, 2016) ("Under Regulation X, a borrower is only permitted a private cause of action for a violation under § 1024.41, which specifically provides that '[a] borrower may enforce the provisions of this section . . . .'"), adopted by, 2017 WL 438745 (E.D. Mich. Feb. 1, 2017); *Schmidt v. PennyMac Loan Services,* 106 F. Supp. 3d 859 (E.D. Mich. 2015) (discussing the regulatory history and holding a private cause of action under Section 1024.40 was not available to a borrower); *Gresham v. Wells Fargo Bank, N.A.*, 2016 WL 1127717, at *3 (5th Cir. Mar. 21, 2016) ("unlike Section 1024.41, Section 1024.39 does not explicitly convey a private right of action to borrowers"); *Brown v. Bank of N.Y. Mellon*, 2016 WL 2726645, at *2 (E.D. Va. May 9, 2016) ("Defendant correctly argues 12 C.F.R. §§ 1024.35, 1024.39, and 1024.40 do not explicitly provide a cause of action to private individuals.").[2]

This Court has not yet ruled on whether Section 1024.35 creates a private right of action. However, in light of the decisions above and cited in the Moving Memorandum, the legislature's failure to expressly provide a cause of action under this section and statutory interpretation principles, this Court should adopt the line of cases holding that no private right of action exists under Section 1024.35.

---

[2] *See also Trudell v. Carrington Mortg. Servs., LLC*, 2016 WL 6080822, at *7 (E.D. Mich. Sept. 27, 2016), *report and recommendation adopted*, 2016 WL 6070124 (E.D. Mich. Oct. 17, 2016) ("What Plaintiff does not acknowledge is that § 1024.40 provides no private right of action whatsoever."); *Carter v. CrossCountry Mortgage, Inc*., 2019 WL 3958275 (E.D. Mich. Aug. 21, 2019) (holding there was no private right of action under Sections 1024.24 and 1024.38 of Regulation X because the plain language of those provisions demonstrated that Congress did not create a private right of action under these provisions).

II.    **EVEN IF THE COURT HOLDS THAT BECKER HAS A PRIVATE CAUSE OF ACTION UNDER REGULATION X, BECKER'S FIRST CAUSE OF ACTION IS REFUTED BY DOCUMENTARY EVIDENCE ANNEXED TO OR REFERENCED IN THE COMPLAINT AND FAILS AS A MATTER OF LAW**

Plaintiffs' Opposition argues that PLS violated Section 1024.35(e) because it failed to perform a reasonable investigation.  (Opposition, Point A(2)).  Plaintiffs contend that had PLS performed a reasonable investigation, "it would have noticed that Becker paid the amount [PLS] instructed her to pay, and would have corrected the mortgage account."  *Id.* at pg. 10.  However, PLS's QWR Response flatly contradicts this allegation.

Specifically, the QWR Response explains that the "payment in the amount of $4,980.00 was received on August 10, 2018, *and was applied toward the June, July and August 2018 payments*.  (PennyMac Declaration, Ex. 14).  Becker then called PennyMac and asked that the funds be reversed and applied toward the escrow account.  (*Id.*).  It is clear that Becker was advised that making the $4,980 payment to "bring the account current" meant remitting payment of all past due monthly mortgage payments, thereby bringing the loan due for the September 2018.  After making the payment, Becker called PLS and asked the funds "that were applied to her monthly payments, be reversed and re-applied to her escrow account."  (*Id.*).[3]  Becker's curious misunderstanding of the phrase "bring the loan current" does not make PLS's statements to Becker and ultimate finding in the QWR Response "factually incorrect."  The reasonable consumer should understand that bringing a mortgage loan current means to bring their monthly mortgage payment up to date.  Notably, the Loan payment history, which was annexed to the QWR Response, confirms PLS's statements in the QWR Response.  *See* PennyMac Declaration, Ex. 18.

---

[3] PLS advised Plaintiffs of the projected escrow shortage in the 2018 Disclosure Statement.  (PennyMac Declaration, Ex. 8).  Thus, Plaintiffs were well aware of the projected escrow shortage and cannot claim that they thought the $4,980 payment covered the shortage.

Plaintiffs cite to *Baker v. Nationstar Mortg. LLC*, 2018 WL 2496383 (S.D. Ohio July 2, 2018) in support of their argument that PLS failed to conduct a reasonable investigation.  In *Baker*, the Court held Nationstar did not conduct a reasonable investigation because it "pointed to no evidence in the record that it conducted a 'reasonably thorough' examination."  *Id*. at * 7.  Here, however, PLS included evidence to support its investigation, including the Loan payment history. (PennyMac Declaration, Ex. 14)  Plaintiffs conveniently failed to annex a complete copy of PLS's QWR Response, which included the Loan payment history, to the Complaint.  Furthermore, PLS's QWR Response provided a substantive history of PLS's tax payments, as well as the conversations between PLS and Becker, and description of what transpired in August 2018.  As such, PLS's QWR Response provided sufficient information to establish that PLS conducted a reasonable investigation.  Moreover, the *Baker* Plaintiffs brought their claims under RESPA, not Regulation X.  *Id*. at *5.  Thus, *Baker* is distinguishable.

In addition, PLS's QWR Response was neither non-responsive, conflicting or factually incorrect as Plaintiffs would like the Court to believe.  Thus, Becker's misunderstanding of what it means to bring the loan current and resulting dissatisfaction with PLS's QWR Response explaining why no error occurred is insufficient to plead a violation of Regulation X.  *See Finster v. U.S. Bank Nat'l Ass'n*, 245 F. Supp. 3d 1304, 1317 (M.D. Fl. 2017) (12 C.F.R. § 1024.35(e) does not require a loan servicer to "provide the resolution or explanation desired by the borrower . . . ."); *Hodge v. Bank of N.Y. Mellon as Trustee*, 2020 WL 1035243 (N.D. Tex. Feb. 12, 2020).  For all these reasons, the portion of Becker's First Count alleging a Regulation X violation fails as a matter of law and must be dismissed.

## III.   BECKER'S RESPA CLAIM'S FAIL AS A MATTER OF LAW

Plaintiffs' Opposition further argues they did not bring a claim under Section 2605(e) of RESPA, and, instead, Becker's RESPA claim is under Section 2605(k).  (Opposition, Point A(3)).

Even if the Court determines that a private right of action exists, which it should not, Section 2605(e) is the applicable provision, ***not*** Section 2605(k), since Section 2605(e) concerns Notices of Error and ways in which a servicer can validly respond and whether a reasonable investigation was conducted.

Regardless, Becker's Section 2605(k)(1) claim fails as a matter of law.  First, Plaintiffs' Complaint merely cites to the relevant sections under 2605(k)(1)(C) and (E).  Complaint, ¶ 76 & 77, 85).  Mere recitations of the statute without more are insufficient to state a claim under RESPA. *See Kolano v. Bank of America, N.A.*, 2014 WL 1117862, at *5 (N.D. Ohio Mar. 19, 2014) (holding plaintiff failed to sufficiently plead her claim that defendant violated RESPA "because Kolano merely relies on a general and broad recitation of the statutory language") ("although a complaint need not contain 'detailed factual allegations,' it does require more than 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'") (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *Sarsfield v. Citimortgage, Inc.*, 667 F. Supp. 2d 461 (M.D. Pa. 2009) (bare allegation that mortgagee failed to make timely escrow disbursements, followed by citation to relevant provision of RESPA, was insufficient to state a claim).

Second, Section 2605(k)(1) forbids a servicer to fail to "take timely action to respond to a borrower's requests to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties" or fail to comply with "any other obligation found by the Bureau of Consumer Financial Protection, by regulation, to be appropriate." 15 U.S.C. 2605(k)(1)(C) and (E).  Becker's claim under 2605(k)(1)(C) must be dismissed for one simple reason:  PLS timely responded to Becker's NOE.  That is all that this specific subsection of RESPA requires.  There is no plausible way PLS could be held liable for failing to take timely action to respond to Plaintiff's letters under § 2605(k)(1)(C).  *See Gasparik*

*v. Fed. Nat'l Mortg. Ass'n*, 2016 WL 7015672, at *7 (D.N.H. Dec. 1, 2016) (rejecting the borrower's conclusory allegation that the servicer violated § 2605(k)(1)(C) by not responding to the borrower's requests because the borrower's own complaint was "replete with allegations that Fannie Mae did in fact respond to the plaintiff's requests to avoid foreclosure"). Moreover, Section 2605(k)(1)(E) is a broad and "catch-all" clause. From Plaintiff's pleading it appears the "obligation" Becker alleges is that PLS failed to comply with 12 C.F.R. § 1024.35. This claim must fail for the same reason Becker's Section 1024.35 claim fails – PLS conducted a reasonable investigation and sufficiently explained why no error occurred.

Third, Becker has failed to plead that she is entitled to actual or statutory damages under RESPA. Specifically, Becker alleges she has suffered actual damages because (1) PLS "improperly assessed fees and charges to the Loan as a direct result of its actions in manufacturing a default on the Loan; (2) she incurred fees and costs in hiring an attorney to prepare and send the NOE and "those fees and charges turned into damages when PLS failed to properly respond to the NOE and the exhibits attached to the Motion demonstrate that PLS has assessed and continues to assess further fees and charges." (Opposition, Point A(4)). Further, Becker alleges she suffered emotional damage because, had PLS "corrected the asserted errors upon receipt of the NOE, PLS would not have continued to move towards filing a foreclosure action and instructing agents to visit Becker's home to take pictures and personally engage with Becker to ask questions." PLS's actions purportedly caused Becker to "worry that her home may imminently be subject to foreclosure." (*Id.*). Becker also claims that her credit has been damaged.

Recovery under RESPA requires more than establishing a violation; RESPA requires damages that are "a result of the failure" of the servicer to comply with the provisions of the act. 12 U.S.C. § 2604(f). Thus, a plaintiff must plead actual damages, as well as a *causal link* between

the alleged RESPA violation and the plaintiff's injuries. *See Pike v. Bank of America, N.A.*, 2016 WL 614013 (N.D. Ohio Feb. 16, 2016); *Tsakanika v. JP Morgan Chase Bank, N.A.*, 2012 WL 6042836, at *4 (S.D. Ohio Dec. 4, 2012).

None of Becker's purported damages are the direct result of PLS's failure to comply with RESPA. The record amply demonstrates that, irrespective of the application of the $4,980 payment, Plaintiffs had been making partial payments under the Loan. For example, per the 2018 Disclosure Statement, Plaintiffs' new mortgage payment under the Loan was $2,540.51 starting on April 1, 2018. (PennyMac Declaration, ¶ 15, Ex. 8). However, Plaintiffs made partial payments in the amount of only $1,760 on March 27, 2018, May 8, 2018 and June 14, 2018 – approximately $800 less than the monthly payment due for that period. (PennyMac Declaration, Ex. 18). Plaintiffs also made a payment in the amount of $2,000 on July 11, 2018. (*Id*.). These funds were held in suspense until sufficient funds were received to complete a monthly mortgage payment. Thus, the July 11, 2018 payment brought Plaintiffs due through June 1, 2018. (*Id*.). Therefore, the fees and charges assessed to the Plaintiffs' account, as well as any purported damage to Becker's credit, were the direct result of Plaintiffs' own failure to timely make complete payments under the Loan, ***not*** a "manufactured" default as Plaintiffs allege, and were not a result of PLS's purported failure to comply with RESPA. (PennyMac Declaration, Ex. 3, ¶ 1, 14).

Further, although RESPA can include emotional damages, any move toward filing a foreclosure action, which has not happened, is the direct result of Plaintiffs' own failure to make timely and complete monthly payments under the Loan. As discussed above, Plaintiffs' default under the Loan was due to Plaintiffs' own failure to make complete, timely payments under the Loan and was ***not*** the direct result of PLS's conduct. (*Id*. at Exs. 18 & 19). Thus, Becker failed to establish entitlement to actual damages for emotional damages. *See Cameron v. Ocwen Loan*

*Servicing, LLC*, 2020 WL 104981, a * 3 (S.D. Ohio Jan. 9, 2020) (plaintiff has never alleged that she suffered any motion damages "as a result of" Ocwen's inadequate response and has failed to provide any evidence that she has.  She is thus not entitled to such damages); *Giordano v. MGC Mortg., Inc.*, 160 F. Supp. 3d 778 (D.N.J. 2016) (holding plaintiff's conclusory allegations of emotional distress, without plausible allegations that the distress resulted from the servicer's alleged RESPA violations, failed to sufficiently allege actual damages, as required to state a claim against a servicer under RESPA).

Becker is also not entitled to statutory damages.  Becker purposely misconstrues the statute and argues that she is entitled to "$2,000 for each violation of RESPA."  (Opposition, Point A(4)(b).  Becker asserted 7 errors in her NOE and therefore, she alleges she is entitled to $2,000 for each violation.  Becker cites to *Moore v. Caliber Homes Loans, Inc.*, 2015 WL 5162482 (S.D. Ohio Sept. 3, 2015) to support this argument.[4]  However, in *Moore*, the plaintiff pled three violations of RESPA (failure to acknowledge the QWR, failure to investigate plaintiffs' disputes and failure to respond).  Here, Becker only alleged **one** violation under Section 2605(k), so *Moore* is distinguishable.  Further, the majority of Courts interpret this language as a cap on the statutory damages awarded.  *See Ploog v. HomeSide Lending*, *Inc*., 209 F. Supp. 2d 863, 869 (N.D. Ill. 2002); *Katz v. The Dime Savings Bank*, 992 F. Supp. 250, 257 (W.D.N.Y. 1997) (holding that RESPA statutory damages are not available on a "per violation" basis and were capped at the $1,000 maximum provided for under RESPA at that time). *Perron on behalf of Jackson v. J.P. Morgan Chase Bank, N.A.*, 845 F.3d 852 (7th Cir. 2017) ("[s]tatutory damages *of up to $2,000* are available if the borrower proves that the servicer engaged in a 'pattern or practice of noncompliance' with its RESPA duties." ) (emphasis added); *Wirtz v. JPMorgan Chase Bank,*

---

[4] Plaintiffs conveniently leave out the remainder of the cited paragraph which states that "But each of those violations stem from one QWR sent by Plaintiffs to Caliber."  (*Id*. a *8).

11

*N.A.*, 185 F. Supp. 3d 1140 (D. Minn. 2016) (holding that, upon a finding that the servicer engaged in a pattern or practice of noncompliance with RESPA, the servicer was liable for $2,000 in statutory damages); *McDonald v .OneWest Bank, FSB*, 929 F. Supp. 2d 1079, 1096 (W.D. Wash. 2013) (RESPA violation did not entitle borrower to $2,000 statutory damages per alleged violation, "where borrower failed to identify damages actually suffered, as he was already in default at time of request," nor did it "result in accrual of late fees or penalties that would otherwise have been avoided"), *reconsideration denied*, 2013 WL 12114868. Thus, even if Becker sufficiently alleged a causal connection between the damages and the purported RESPA violation, as well as a pattern or practice of noncompliance by PLS, Becker would only be entitled to statutory damages *up to* $2,000.

Further, Becker's bareboned allegation that PLS "has had 1,046 consumer complaint lodged against it" with the CFPB (Complaint, Point A4(B)) does not evidence a pattern or practice of non-compliance with RESPA. The CFPB complaints is irrelevant to Becker's claim. To successfully seek statutory damages, a plaintiff has to show that the servicer has a pattern or practice for failure to respond to borrowers' *notices of errors or other qualified written requests*. Even if the Court were to consider the CFPB complaints annexed to the Complaint, which it should not, Becker still has not established a pattern or practice. As set forth in the Motion, the CFPB complaints are from the years 2015 and 2016 – over four years ago. Moreover, PLS services thousands of loans, so 13 CFPB complaints cannot establish a pattern or practice of violations.

Finally, Plaintiffs cited to *Cameron v. Ocwen Loan Servicing, LLC*, 2020 WL 104981, at *3 (S.D. Ohio Jan. 9, 2020) for the proposition that Becker is entitled to attorneys' fees and costs in connection with preparing the NOE. In some instances, costs can *become* actual damages when a servicer fails to adequately respond to the notice of error. *Id*. That is not the case here. The

12

evidence is clear that PLS adequately responded to Plaintiffs' NOE.  Moreover, this Court has previously rejected damages based on seeking to initially assert a possible violation of RESPA, which is what Becker is attempting to do.  *See Lewis v. PNC Bank, N.A.*, 2018 WL 6249989 at * 7 (S.D. Ohio Nov. 29, 2018) (joining in "the chorus rejecting damages based upon seeking to initially assert RESPA rights, prior to any possible violation of RESPA").  Thus, Becker is not entitled to actual damages for the costs and fees in connection with the preparation of the NOE.

For all these reasons, Becker's RESPA claim fails as a matter of law and must be dismissed.

## IV. PLAINTIFFS' BREACH OF CONTRACT CLAIM IS REFUTED BY THE DOCUMENTARY EVIDENCE ANNEXED TO AND/OR REFERENCED IN THE COMPLAINT

Plaintiffs' Opposition argues that PLS breached the Mortgage by failing to properly make property tax payments and failing to properly apply Plaintiffs' monthly payments.  (Opposition, Point B).  However, the documentary evidence annexed to, or referenced in, the Complaint refutes this claim.

Despite Plaintiffs' arguments, the documentary evidence, namely, the Note and Mortgage annexed to Plaintiffs' Complaint, conclusively establishes that Plaintiffs failed to perform their contractual obligations under such Loan documents by failing to make complete, timely monthly mortgage payments.  (PennyMac Declaration, Exs. 2, 3, 18 & 19).  There was no "manufactured" default as Plaintiffs allege.

For example, Plaintiffs' February 2018 payment was in the amount of $1,600; the amount due under the Loan at that time was $1,696.  (PennyMac Declaration, Exs. 7 & 18).[5]  This payment was insufficient to make a complete monthly Loan payment.  Per the 2018 Disclosure Statement,

---

[5] Plaintiffs essentially admit they defaulted under the Loan.  Specifically, they state that they "made proper payments from the Loan's origination through March 2018."  (Opposition, Point B).  Thus, it is clear Plaintiffs' defaulted under the Loan, thereby materially breaching the Note and Mortgage.

Plaintiffs' new mortgage payment under the Loan was $2,540.51 starting on April 1, 2018. (PennyMac Declaration, ¶ 15, Ex. 8).  However, Plaintiffs made partial payments in the amount of $1,760 on March 27, 2018, May 8, 2018 and June 14, 2018 – approximately $800 less than the monthly payment due for that period.  (PennyMac Declaration, Ex. 18).  Further, when Becker contacted PLS in August 2018, Plaintiffs were due for their June 2018 payment.  At Becker's direction, the $4,980 payment, which brought the Loan current to August 2018, was reversed and applied to Plaintiffs' escrow account.  (PennyMac Declaration, Ex. 14, 18).  Thus, the documentary evidence makes clear that Plaintiffs' default was the direct result of their own failure to make complete monthly payments under the Loan.  Moreover, the Note and Mortgage expressly permit PLS to impose late fees, obtain insurance coverage, and charge Plaintiffs for services performed in connection with Plaintiffs' default under the Loan, including property inspection and valuation fees.  Thus, PLS cannot be said to have breached the contract by making payments and charging fees that are contractually permitted under the express terms of the Note and Mortgage.

Finally, PLS fulfilled its contractual obligations by making timely tax payments in the full amount based on the terms of the Note and Mortgage.  (*Id*. at Ex. 18).[6]  Even if there was a tax delinquency, PLS made the payment upon notice from Hamilton County.  (Pennymac Declaration, Ex. 14, 18).  Thus, any purported late tax payment to Hamilton County would *not* constitute a material breach as Plaintiffs allege.  Accordingly, Plaintiffs' breach of contract claim fails as a matter of law and must be dismissed with prejudice.

---

[6] The Disclosure Statements reflect the amounts paid by PennyMac were correct.  *See* PennyMac Declarations, Exs. 5-11).

## V. PLAINTIFFS' THIRD COUNT ALLEGING VIOLATIONS OF OHIO'S CONSUMER SALES PRACTICES ACT FAILS AS A MATTER OF LAW BECAUSE IT IS INAPPLICABLE TO PLS

Recognizing that their OSCPA claim fails as a matter of law as pled in the Complaint, Plaintiffs' Opposition argues that the OCSPA provides for claims against mortgage loan assignees and purchasers. Specifically, Plaintiffs allege that PLS is a supplier under the OSCPA "as it is the assignee of the Loan and a nonbank mortgage lender." (Opposition, Point C). However, Plaintiffs' Complaint directly contradicts this argument, as it alleges that "[PLS] *is the servicer of a note* executed by Plaintiffs [] an mortgage on the Home that secures said note []. [PLS] serviced the Loan since April 1, 2015." (Complaint, ¶ 5) (emphasis added). Further, the Complaint alleges "Non-party Federal home Loan Mortgage Corporation is the current owner of the Loan." (Complaint, ¶ 4). Thus, by Plaintiffs' own admission, PLS is the servicer of the loan and *not a supplier*. Therefore, Plaintiffs' CSPA claim fails because a mortgage loan servicer is *not* a "supplier" as defined in the CSPA. *See Anderson v. Barclay's Capital Real Estate, Inc.*, 136 Ohio St. 3d 31, 32, 989 N.E.2d 997, 1002 (2013).

Plaintiffs cite to *Bucy v. PennyMac Loan Services, LLC*, 2016 5719804 (S.D. Ohio Sept. 30, 2016) for the proposition that *Anderson* is inapplicable, and the OSCPA generally provides for claims against mortgage servicers. However, Plaintiffs conveniently omitted that the Court in *Bucy* determined that *Anderson* was not dispositive because, although the Complaint alleged PennyMac serviced the loan, "Plaintiff also alleges that PennyMac purchased his mortgage loan." *Id.* *12. Thus, in *Bucy*, defendant PennyMac was the servicer *and* owner of the subject loan. Here, however, PLS is merely the servicer; Plaintiffs specifically plead that PLS is the servicer and that non-party Federal home Loan Mortgage Corporation owns the Loan. Thus, Plaintiffs' reliance on *Bucy* is misplaced. Accordingly, Plaintiffs' Third Court fails as a matter of law and must be dismissed with prejudice.

## VI. PLAINTIFFS' FOURTH AND FIFTH COUNTS ALLEGING A VIOLATION OF THE RMLA FAIL AS A MATTER OF LAW

Plaintiffs' Opposition contends that the RMLA applies to PLS pursuant to R.C. 1322.07(A). (Opposition, Point D). However, Plaintiffs' Complaint alleges that PLS is a "nonbank mortgage lender" under R.C. 1322.01. (Complaint, ¶ 117 & 128). Nowhere in the Complaint do Plaintiffs cite Section 1322.07(A). (*Id.*). Plaintiffs cannot now allege a completely new claim in Opposition to the Motion. *See U.S. v. Medquest Assoc's, Inc.*, 702 F. Supp. 2d 909, 918 n.2 (M.D. Tenn. 2010) ("it is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss"); *Hill v. Ohio State University T&L*, 2013 WL 2295881, at *3 (S.D. Ohio May 24, 2013) ("because none of these allegations are in the Amended Complaint, the Court cannot consider them as informing the motion to dismiss"). This is nothing but an improper blatant attempt to correct the errors in the Complaint to plead a claim under the RMLA. In any event, PLS complied with R.C. 1322.07(A), which Plaintiffs admit.[7] (Opposition, Point D).

Moreover, Plaintiffs cannot establish that PLS violated 1322.40(B), (C) and (I) and 1322.45(A) of the RMLA. As discussed in the Moving Memorandum, Section 1322.40 lists conduct that is prohibited under the RMLA. Section 1322.40 provides, in pertinent part:

> No registrant, licensee, or person required to be registered or licensed under this chapter, or individual disclosed in an application as required by this chapter, shall do any of the following:
>
> (B) Make false or misleading statements of a material fact, omissions of statements required by state or federal law, or false promises regarding a material fact, through advertising or other means, or engage in a continued course of misrepresentations;
> (C) Engage in conduct that constitutes improper, fraudulent, or dishonest dealings;

---

[7] R.C. 1322.07(A) provides that an entity cannot act as a mortgage servicer without first having obtained a certificate of registration.

(I) Engage in any unfair, deceptive, or unconscionable act or practice
prohibited under sections 1345.01 to 1345.13

R.C. 1322.40.

Here, Plaintiffs' allegations that PLS violated Section 1322.40 are merely conclusory

allegations and legal conclusions and are insufficient to state a claim. *See Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 555 (2007). Regardless, the documentary evidence establishes that PLS

did not make any false or misleading statements. *See* PennyMac Declaration, Exs. 6-18. As

discussed in detail in the Moving Memorandum and above, PLS advised Becker that to bring her

Loan current, she would have to make the $4,980 payment. Becker misconstrued what PLS meant.

Additionally, the documentary evidence conclusively establishes that PLS did not engage in a

continued course of misrepresentation by making false or misleading statements of material fact

and false promises regarding a material fact, nor did it engage in any unfair, deceptive or

unconscionable acts or practices.

Further, Plaintiffs failed to establish that PLS engaged in conduct that constitutes improper,

fraudulent, or dishonest dealings under R.C. 1322.40(C) because the Complaint does not allege,

and Plaintiffs cannot demonstrate, that PLS engaged in the following conduct that constitutes

improper, fraudulent and dishonest dealings:

(A) Failing to return all original documents provided to the registrant
or licensee by the borrower;
(B) Permitting an unlicensed individual to originate residential
mortgage loans;
(C) Sharing or splitting any commission, discount, fee or other
compensation for originating a residential mortgage loan with a person
who is not licensed or registered under Chapter 1322. of the Revised
Code but who should be licensed or registered;
(D) Knowingly aiding, abetting, or conspiring with a person to
circumvent the requirements of Chapter 1322. of the Revised Code or
this rule chapter;
(E) Recommending or encouraging default or delinquency or
continuation of an existing default or delinquency by a borrower on any

17

existing indebtedness prior to closing a residential mortgage loan which refinances all or a portion of such existing indebtedness;
(F) Promising to refinance a residential mortgage loan in the future at a lower interest rate or with more favorable terms;
(G) Materially underestimating closing costs;
(H) Depositing any residential mortgage loan disbursement check that is not made payable to the registrant, qualified exempt entity or licensee;
(I) Abandoning or improperly disposing of loan files containing financial and mortgage information of borrowers;
(J) Refusing or failing to fund a consummated loan, other than when an borrower rescinds the loan in accordance with 12 C.F.R. 0126.14 or 1026.23 . . . .

Ohio Admin. Code § 1301:8-7-16.

Finally, Section 1322.45 provides that a registrant, licensee, and any person required to be registered or licensed under the RMLA, must: (1) safeguard and account for any money handled for the buyer; (2) follow reasonable and lawful instructions from the buyer; (3) act with reasonable skill, care, and diligence; (4) act in good faith and with fair dealing in any transaction, practice, or course of business in connection with the brokering or originating of any residential mortgage loan; and (5) make reasonable efforts to secure a residential mortgage loan, from lenders with whom the registrant, licensee, or person regularly does business, with rates, charges, and repayment terms that are advantageous to the buyer. R.C. 1322.45(A).[8] Plaintiffs' claim under Section 1322.45 fails for the following reasons:

- As evidenced by the Loan payment history annexed to the QWR Response, PLS properly applied Plaintiffs' payments to the Loan. (PennyMac Declaration, Ex. 18).

- PLS corrected its application of the $4,980 payment in August 2018, after Becker directed PLS to apply the funds to the escrow balance. (*Id*.).

---

[8] Plaintiffs conveniently omitted the complete language of R.C. 1322.45(A) in the Complaint. (Complaint, ¶ 130).

- PLS performed a reasonable investigation, timely responded to Plaintiffs' NOE and provided a thorough explanation of its review of Plaintiffs' account and why there were no errors. (*Id*. at Ex. 14).

- Based on Plaintiffs' Complaint and Opposition, this matter does not involve the brokering or originating of a residential mortgage loan.

Thus, Plaintiffs fail to state a claim under R.C. 1322.45(A).[9]

## <u>CONCLUSION</u>

For all the foregoing reasons, Defendant, PennyMac Loan Services, LLC, respectfully requests that the Court issue an Order granting its Motion to Dismiss Plaintiffs' Complaint in its entirety with prejudice and grant any other relief the Court deems just and proper.


Dated: July 1, 2020

Respectfully submitted,

**BLANK ROME LLP**

 _/s/John R. Wirthlin_____
John R. Wirthlin (0031526)
Sarah A. Wilson (0083816)
1700 PNC Center
201 East Fifth Street
Cincinnati, Ohio 45202
(513) 362-8747
swilson@blankrome.com
jwirthlin@blankrome.com
*Counsel for Defendant*
*PennyMac Loan Services, LLC*

---

[9] Plaintiffs argue that the ORMLA was amended to apply to mortgage lenders and therefore, the cases cited in PLS's Motion have no weight. However, despite the amendment to the ORMLA, the cases cited by PLS in the Motion have not been overturned.

**<u>Certificate of Service</u>**

I hereby certify that on this 1st day of July, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all of the attorneys of record in the case.

*/s/ John R. Wirthlin*
John R. Wirthlin

20